## ERSKINE *vs.* ERSKINE.

The defendant contracted to furnish the plaintiff a quantity of wood at a certain place, and delivered it accordingly.—*Held*, that he was not bound to notify the plaintiff that he had delivered it. But if he had contracted to deliver perishable property, such as would be injured by exposure, or by being suffered to remain where it was left without being taken care of, perhaps a notice might be necessary.

If a party be ready to pay money at a certain time and place, according to his contract, and be summoned as trustee of the other party in a process which is afterwards discontinued, a demand upon him, pending the process, will not be sufficient to maintain an action for the money.

The defendant agreed to pay a sum of money to the plaintiff on the 14th day of May. On the 17th of May he was summoned as the trustee of the plaintiff, not having paid the money. There was evidence that "late in the month of May," the plaintiff demanded the money.—*Held*, that the evidence proved that the demand was made during the pendency of the process of foreign attachment.

Erskine *v.* Erskine.

If a party promise to pay money on a specified day, at his house, a written demand of the money, left at his house in his absence, will be invalid.

But it might, perhaps, be sufficient, if it should appear that he knew a demand was to be made, and went away to avoid a demand upon him in person.

The defendant gave the plaintiff a bond, conditioned that he would " furnish keeping" for the plaintiff's cattle, both winter and summer, and he had at all times in his barn a sufficient quantity of hay for the cattle. The parties resided together in the same house.—*Held*, that it was not the defendant's duty to fodder the cattle.

*Semble* that if the parties had lived at a distance from each other, it would have been the defendant's duty to take charge of the cattle, and to fodder them.

DEBT, on bond dated on the 14th day of May, 1836, in the penal sum of two thousand dollars.

The condition of the bond provided, among other things, that the defendant should pay the plaintiff the sum of $839.00 at the dwelling house of the defendant, in Claremont, in eight annual payments, with interest on the first half of the sum, in equal instalments; that he should furnish keeping for two cows and one horse for the plaintiff, both winter and summer, that is, during the year; that he should furnish the plaintiff twelve cords of four feet wood at the door, each and every winter, and as much more wood as he might need to keep one fire, by his getting up the wood himself, provided twelve cords should not be sufficient.

The defendant pleaded the general issue, with a brief statement that the condition of the bond had been performed. The plaintiff offered no evidence of any breach of the condition except in the particulars above specified, nor of any breach before the 14th day of May, 1840.

The defendant offered a witness who testified that in the morning of the 14th of May, 1841, he was informed that the plaintiff was lying intoxicated in the road; that he went to the defendant's house and told him of it, and proposed to him to go to the place where the plaintiff was lying. The defendant said he knew it, and added that, before he went, there was some money which he wished the witness to count, and which was due the plaintiff from the defendant on that

day, and he requested the witness to wait until he had tendered the money. He produced the money, and said, " here is the money due on the bond this day," and delivered it to the witness, who. counted it, and found it amounted to $104.87, and delivered it to the defendant. They then went to the plaintiff, and found him intoxicated, and unable to move.

The witness further testified that he saw the same money in the fall of the year 1841, in court. Some money was then produced, and the witness said it was the same which he saw last fall, and which he counted at the defendant's request on the 14th day of May, 1841.

The plaintiff offered a witness who testified that on the 3d or 4th day of June, 1841, he went with the plaintiff to the defendant's house three times, for the purpose of witnessing a demand to be made by the plaintiff on the defendant for the money, but that the defendant was not at home. The plaintiff then left at the house a paper, of which the following is a copy, and the original of which was produced at the trial. " Claremont, June 3d, 1841. Mr. Hiram Erskine : I hereby make a demand on you for what is due me this present year in money, and the expense of keeping two cows and one horse the past winter, and twelve cords of wood. James Erskine." This witness also went on the same occasion to the defendant's house, for the further purpose of notifying him that he had discharged him as trustee, in a suit brought by the witness against the plaintiff, in which the defendant was summoned as trustee, and which was commenced on the 17th day of May, 1841.

The plaintiff also offered evidence that late in the month of May, 1841, at the house of the defendant, the plaintiff told him he wanted his money, to which the defendant made no answer, and then the plaintiff said he wanted the money due on his bond. The defendant said he had the money, but that he would not let the plaintiff have it, and would not sleep a night with the plaintiff in the house. The witness said that the plaintiff was in one room, and the defend-

ant in another room adjacent, and that the doors between the rooms were open. But a witness for the defendant, who was also present, stated that he heard the plaintiff say he wanted his money, but did not know that he said it to any person in particular, and did not remember that the defendant was present.

In relation to the keeping of the cows and horse, the defendant offered evidence that he had always had sufficient hay and pasturage for them, and that in the spring of the year 1841 the plaintiff kept some cattle there ; and a witness testified that on one occasion, having heard a report that the plaintiff complained that his cows and horse were starved, he told the defendant of it. The defendant then said to the plaintiff, "I will not feed them any longer ; I am not bound to feed them ; there is the barn and the hay, and there are the stanchions, and you may feed them yourself."

A witness for the plaintiff testified that in the summer of the year 1840, the plaintiff employed him to keep some cows for him, as long as the milk would pay for the keeping, and then to drive them to the defendant's—that he kept them until the month of December, and then drove them to the defendant's. The defendant was not at home, and he went to him, and told him what he had done, and the defendant said he would have nothing to do with them, but he did not say that he would not furnish keeping for them. Another witness stated, that he also was present, and that the defendant said he would not have anything to do with the cows, and would not fodder them any more. Another witness testified that the plaintiff requested him to see to the cows, and he talked with the defendant about them, and the defendant said there was hay enough there, but that he would not feed them.

The defendant also proved, that in the latter part of the month of December, 1840, he drew twelve cords of wood for the plaintiff, and deposited it at the door.

A verdict was taken, by consent, for the plaintiff, subject to the opinion of the court.

*Leland*, (with whom was *Pierce*) for the plaintiff.

I. The case finds that late in May, 1841, the plaintiff was at the defendant's house, and told him he wanted the money due on his bond. The defendant said he had the money, but that he would not let him have it, and would not sleep a night in the house with him. The witness does not fix any particular day on which this demand was made, but if it were subsequent to the 14th day of May, it was sufficient. 3 *Stark. Ev.* 1395.

Here was an express demand, and an absolute and unconditional refusal, without assigning any reason.

The case finds that on the 17th of May, the defendant was summoned as the plaintiff's trustee, and that on the 3d of June he was notified that the suit was settled, and that a written demand was then left at his house for the money.

1. The case does not state whether the demand and unconditional refusal were prior to the service of the trustee process, or after the notice of its having been settled.

2. The legal presumption is, that it was between the 14th and 17th of May, or between the 3d and 16th of June, because no mention of it was made at the trial, and no reason assigned why he would not make the payment.

3. If, on demand, the defendant assigned no reason for the non-payment, he now can have no excuse. If no reason be given at the time of a refusal to perform a contract, the party cannot avail himself of any on trial. 3 *Stark. Ev.* 1244, 1489. The excuse must be stated when the party is called upon for performance. 2 *Saund. Rep.* 107 ; 3 *H. Bl.* 178, *French* vs. *Campbell.*

II. The written demand, left at the defendant's house on the 13th of June, is sufficient. 3 *Stark. Ev.* 1498 ; 1 *Esp.* 22, 31.

The defendant, although he may not be bound to be at

home to make the payment, must leave the money at the house, to be paid when called for.

III. The bond provides that the defendant shall furnish the plaintiff twelve cords of wood at the door, each and every winter; and the case finds that in the latter part of December, 1840, the defendant drew for the plaintiff, at the door, twelve cords of wood. This is insufficient, because,

1. The words "during the winter" are indefinite, as to the day, and therefore it was necessary to notify the plaintiff that he had delivered the wood in performance of his contract.

2. When a party has a time comprehending more than one day, a week or month for instance, to deliver an article in, the law is that he shall inform the other party on what day within the time he intends to deliver it; and moreover, for aught that appears here, the wood might have been taken away the next day.

IV. The construction of the clause for keeping the cows has been settled by the parties. The meaning of the words "furnish keeping," is, that the party shall keep and take care of the cows, and his refusal to have anything to do with the cows was a breach of the contract.

*Hubbard*, for the defendant.

GILCHRIST, J. The evidence does not show a breach of that clause in the condition of the bond by which the defendant agreed that he would furnish the plaintiff twelve cords of wood at the door, each and every winter. The defendant proved that in the latter part of the month of December, 1840, he drew twelve cords of wood for the plaintiff, and deposited it at the door. The plaintiff argues that here was a breach of the condition, because the defendant did not give him notice of the delivery of the wood; and he says also, that, for aught which appears, the wood might

have been taken away the next day. It is true, he might have taken it away, and he might have committed any other trespass upon the plaintiff's property or upon his person; but if a party have fulfilled a contract for the delivery of property, the contingency that he may at some future time commit some imaginable wrong, will hardly render invalid what he has properly done. We cannot conceive on what ground it was necessary to notify the plaintiff. Cases may be supposed, perhaps, where, although property might have been delivered in pursuance of a contract, its spirit could not be complied with unless the party had been notified of the delivery. Perhaps perishable property, such as would be injured by exposure to the weather, or by being suffered to remain where it was left, without being taken care of, could not be delivered so as to satisfy the spirit of a contract, unless a notice should accompany the delivery. But unless a notice should be rendered necessary by some peculiar circumstances, we are not aware that it should be given; nor do we know that there is any such general principle as the plaintiff has stated, which, in a case like the present, would require it. The defendant agreed to deliver the wood at the plaintiff's door. He did so deliver it. It does not appear that a notice could have answered any useful purpose, and we think that upon this point there has been no breach of the condition.

The next question is, whether the condition were broken for the payment of the money.

It appears that the requisite sum was ready at the house of the defendant, at the appointed time, on the 14th day of May, 1841.

The plaintiff offered evidence that late in the month of May he demanded the money of the defendant. On the 17th day of May the defendant was summoned as the trustee of the plaintiff, and as the creditors of the plaintiff might lawfully attach the money in the hands of the defendant, the latter would not be bound to pay it to the plaintiff dur-

ing the pendency of the trustee process. Was the demand made before the service of the trustee process, or after ? This depends upon the construction to be given to the words, "late in May." We think they mean a later day than the 17th. We should not call the 13th day—two days previous to the middle of the month—*early* in the month ; and we cannot say that the 17th day—two days subsequent to the middle—is *late* in the month. The 17th day is about the middle of the month ; and we must construe the demand to have been made subsequent to the 17th day. It is also to be remarked, that against the plaintiff's evidence tending to prove that a demand was then made, is to be weighed the testimony of a witness for the defendant, who was present, and heard no demand made by the defendant upon the plaintiff. The subsequent demand in writing, left at the defendant's house in his absence on the 3d or 4th of June, is invalid. The defendant was not bound to remain at home, to receive the plaintiff, and the written demand could be of no avail ; unless, perhaps, it should appear that he knew of the plaintiff's intention, and went away to avoid a demand upon him in person, which he does not appear in this case to have done. We think that in this particular the condition has been complied with.

The condition also binds the defendant to " furnish keeping for two cows and one horse for the plaintiff, both winter and summer ; that is, during the year."

The contract contemplated a separate household establishment for the plaintiff. In the condition, various articles are enumerated which the defendant agrees to furnish to the plaintiff, and the word " furnish," in this connection evidently means " to provide for." He also agrees to permit the plaintiff to have certain privileges in the house and garden. The plaintiff resided in the house with the defendant, the privileges were there to be enjoyed, and the defendant's contract was to be performed on the premises occupied by the parties, so far as from its nature could be done.

The place being thus certain where the contract was to be performed, the question arises as to the manner of its performance, and the effect of the evidence.

The defendant was to *permit* the plaintiff to occupy "the square room," and to occupy the garden. Of course, he was bound to have the room and garden in such a situation that they could be occupied and enjoyed by the plaintiff. He was also to furnish apples for the plaintiff. But he was to do something more than permit the plaintiff to go into his orchard and gather them, if there happened to be any apples upon the trees, as he was to do more than permit the plaintiff to go into his mowing land and cut the grass, if there were any. Whatever article he was to furnish the plaintiff, he was to provide him with; to procure it, and place it where the plaintiff could reasonably and conveniently enjoy it. It would not have been a compliance with his contract, that he had, somewhere upon his premises, grass which might have been made into hay, or apples which might have been gathered; for the *keeping* for the stock was not to be furnished in the mowing field, nor were the apples to be used in the orchard. The contract required that the grass should be cut and the apples gathered.

It is not denied that there was hay enough in the barn for the plaintiff's stock; and the case now turns upon the question, whether it be the duty of the defendant to fodder the stock—to take charge of them in the barn, and feed them. If such be his duty, it will result from the construction of the word "furnish."

If A, living at Newport, agree to furnish keeping for B's cattle, B living at Claremont, perhaps it might properly be held that he should furnish it at Newport, and that he should fodder the cattle sent him by B, as the latter could not at Claremont perform that duty. And, generally, if one agree to furnish keeping for cattle at another place than the owner's residence, the contracting party should fodder them; for this would be but a reasonable construction of the con-

Erskine *v.* Erskine.

tract, and what the parties probably would intend. But where the parties live together, and the evident intention is, that one is only to provide a separate household establishment for the other, in such a manner that he can reasonably enjoy it, the construction of such a contract as this must vary with the situation of the parties.

If the defendant should do more than provide sufficient hay for the cattle, in the barn, in the winter, if he should fodder them, what will be his duty in the summer? Should he see that they are driven to the pasture in the morning, and brought home in the evening? If the word "furnish" mean any thing more than to provide a sufficient pasture for them, such must be his duty. But we cannot give the word so large a meaning.

There is a clause in the condition, which binds the defendant to *keep* such cattle as the plaintiff then owned, until the first day of November. This is a different matter. A contract to keep cattle, is a contract to take charge of them generally; not only to provide keeping for them, but to do every thing necessary for their maintenance—to fodder them; and such is the general construction of such a contract.

The opinion of the court is, that there is no evidence of a breach of the condition in this particular;—that the defendant did all his duty, by providing a sufficient quantity of hay with which the plaintiff might fodder his cattle, should he see fit so to do, and that there must be

*Judgment for the defendant.*