Belknap
No. 79-230

## Cove–Craft Industries Inc.

v.

## B. L. Armstrong Co. Ltd.

March 13, 1980

*Upton, Sanders & Smith,* of Concord (*Ernest T. Smith, III,* orally), for the plaintiff.

*Normandin, Cheney & O'Neil,* of Laconia (*A. G. O'Neil, Jr.,* orally), for the defendant.

GRIMES, C.J. The issues in this contract case are whether the requirements of RSA 300:14, New Hampshire's long-arm statute, have been met and, if so, whether the defendant, a foreign corporation, has sufficient contacts with this State to enable the court to assert jurisdiction over it. We hold that, in the present case, jurisdiction attaches.

The plaintiff is a New Hampshire corporation engaged in the manufacture of wooden crutches in Gilford. The defendant is a Canadian brokerage company dealing with, among other things, the sale of hardwood veneer. In essence, the defendant acts as a middleman between buyers and the Canadian mills which produce veneer.

Over the eighteen years it has been in business, the defendant has sold materials to various companies doing business in this State. Moreover, the defendant advertises in certain trade magazines which are distributed in New Hampshire. Although the defendant maintains no agents or officers in this State, before this controversy arose, one of the defendant's officers visited the plaintiff's facilities on at least one occasion.

The original contract between the parties arose by virtue of a letter from the plaintiff expressing interest in obtaining veneers and requesting a price quotation. Thereafter, the plaintiff sent purchase orders to the defendant which subsequently arranged with a mill for shipment. The plaintiff's purchase orders routinely stated "[s]ame must arrive . . .," specifying a date. In reply, the defendant's acknowledgments specified "F.O.B. the Mill," although some also expressly stated, on a line labeled shipping date, "to arrive week of . . . ."

Subsequent to a change in ownership of the plaintiff corporation in 1978, the new management contacted officers of the defendant regarding future veneer purchases. Upon receiving assurances that an outstanding balance would be paid, the defendant agreed to accept further orders from the plaintiff.

In May 1978, the plaintiff issued a purchase order for four different "loads." With respect to each load, the purchase order specified a required date of arrival in Laconia. The defendant returned four separate acknowledgments, each including the term "F.O.B. the Mill" but also stating after each shipping date "[t]o arrive . . . ." with date specified. Claiming late delivery and poor quality of the tendered goods, the plaintiff brought suit against the defendant for damages.

Suit was instituted against the defendant by service of process upon the secretary of state pursuant to RSA 300:14, the New Hampshire long-arm statute. Appearing specially, the defendant filed a motion to dismiss for lack of jurisdiction. After a hearing and recommendation

by a Master (*Robert A. Carignan*, Esq.), the motion was denied by the Trial Court (*Batchelder*, J.). The defendant seasonably appealed.

■■ In determining whether the defendant corporation is amenable to suit in New Hampshire, our first inquiry is whether the requirements of RSA 300:14 regarding in personam jurisdiction have been met. *Town of Haverhill v. City Bank & Trust Co.*, 119 N.H. 409, 402 A.2d 185 (1979). Only when that is so must we consider whether the defendant had contacts with this state sufficient to satisfy due process. *See, e.g., World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

■■ In pertinent part, RSA 300:14 provides:

> If a foreign corporation makes a contract to be performed in whole or in part by either party in New Hampshire . . . such acts shall be deemed to be doing business in New Hampshire by such foreign corporation and shall be deemed equivalent to the appointment . . . of the secretary of state of New Hampshire . . . to be its . . . attorney upon whom may be served all lawful process in any actions . . . arising from or growing out of such contract . . . .

We construe this statute "to allow the exercise of jurisdiction over foreign corporations to the full extent of the constitutional limit." *Engineering Associates v. B & L Liquidating Corp.*, 115 N.H. 508, 511, 345 A.2d 900, 902 (1975). Moreover, performance of any part of the contract in New Hampshire by either party thereto renders the statute applicable to both. *Town of Haverhill v. City Bank & Trust Co.*, 119 N.H. 409, 412, 402 A.2d 185, 187 (1979).

The plaintiff argues that because the parties envisioned delivery of the veneers at its place of business in Laconia, the contract is one "to be performed . . . in part . . . in New Hampshire." RSA 300:14. The defendant, on the other hand, asserts that its obligation ended when the goods were delivered to a common carrier in Canada. Thus, in its view, the contract was completed outside this State. In support of this contention, the defendant relies on the term "F.O.B. the Mill" included in its acknowledgments to the plaintiff's purchase orders.

■ ■ Arguably, this agreement is governed by New Hampshire's version of the Uniform Commercial Code, RSA ch. 382–A. That statute applies, absent the parties' agreement to the contrary, "to transactions bearing an appropriate relation to this state." RSA 382–A:1–105(1). A contract by which goods are to be "delivered, shipped or *received in New Hampshire* . . ." bears such an "appropriate relation to this state." New Hampshire Comments, RSA 382–A:1–105 (emphasis added). Even if Canadian law were to govern the agreement, however, where there is no evidence of foreign law, it is presumed to be in accord with New Hampshire common law. *Garapedian Inc. v. Anderson*, 92 N.H. 390, 31 A.2d 371 (1943).

■ ■ Under the Code, F.O.B., meaning free on board, is a delivery term specifying the seller's duties regarding the goods. RSA 382–A:2–319. Unless the parties display some other intent, "F.O.B. the Mill" means that the seller must bear the expense and risk of placing the goods in the hands of a carrier. *Id.; see* RSA 382–A:2–504.

■ ■ When, as here, the contract consists of various documents, the intent of the parties must be determined from all the instruments read together. *Bellak v. Franconia College*, 118 N.H. 313, 386 A.2d 1266 (1978). Aside from the F.O.B. term, the plaintiff specified that the goods must arrive at Laconia by a certain date. The defendant's acknowledgments expressly recognized this. Moreover, the defendant's principal stockholder and officer testified that the defendant was obligated to have the veneer at the plaintiff's place of business no later than the specified dates. It would not have been unreasonable for the master to conclude that the defendant, by virtue of the express terms of the agreement, assumed the duty to deliver the veneer to Laconia by the dates specified. *Erin Food Services, Inc. v. 688 Properties*, 119 N.H. 232, 401 A.2d 201 (1979). Such an outcome accords with common law. *Erskine v. Erskine*, 13 N.H. 436 (1843).

■ Moreover, the plaintiff was certainly bound by the contract to perform in New Hampshire. Upon delivery of the goods in Laconia, the plaintiff was obliged both to accept them and to make payment therefor. RSA 382–A:2–507. Thus, we hold that the contract in this case satisfied the requirements of RSA 300:14.

We are also of the opinion that in the instant case, the requirements of due process have been met. *World-Wide Volkswagen Corp. v. Woodson,* 100 S. Ct. 559 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). In the years following the decision in *International Shoe Co.,* there has been a trend toward expanding the permissible scope of State jurisdiction over foreign corporations. *E.g., McGee v. International Life Ins. Co.,* 355 U.S. 220 (1957). Due in part to the increase in business conducted across state lines, this change has been encouraged by the lessening of the burden of defending such a suit brought about by improved communications and transportation. *Id.* at 222–23. These "developments . . . have only accelerated in the generation since [*McGee*] was decided." *World-Wide Volkswagen Corp. v. Woodson, supra* at 565.

Here the defendant has sold products to various buyers in New Hampshire over a long period of time. Through the medium of various trade journals, it has advertised in this State. Moreover, as we have observed, the defendant had the duty of delivering at Laconia, veneer of the quantity and quality ordered. Acceptance of these goods would occur in this State and payments therefore would be mailed from New Hampshire where the plaintiff is resident. *See McGee v. International Life Ins. Co.,* 355 U.S. 220 (1957).

The instant case, therefore, is unlike *World-Wide Volkswagen Corp.* where the corporate defendant had no contacts with the forum state, Oklahoma. There the Court observed that the defendants carried on no activity whatever in the forum state:

> They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars . . . to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market.

100 S. Ct. at 566. The facts of that case are in sharp contrast to those of the case before us. Here the conduct of the defendant has been "such that he should reasonably anticipate being haled into court [here]." *Id.* "[I]f the sale of a product . . . is not simply an

isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States. . . ." *Id.* Indeed, the present suit is one arising directly out of such activities carried on by the defendant. *See International Shoe Co. v. Washington,* 326 U.S. 310 (1945).

New Hampshire has a manifest interest in providing an effective means of redress for its residents when a seller fails to deliver goods here of the quantity and quality ordered on time. *McGee v. International Life Ins. Co. supra.* If the plaintiff in this action had wrongfully refused to pay for any of the products, the defendant would have the benefit of New Hampshire laws and courts. *Town of Haverhill v. City Bank & Trust Company,* 119 N.H. 409, 402 A.2d 185 (1979).

In sum, we conclude that both the defendant and this litigation have sufficient contacts with New Hampshire so that exercising jurisdiction in this case would be consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The motion to dismiss was therefore properly denied.

*Exceptions overruled.*

All concurred.