Andreas **PAPAFAGOS**, et al.

v.

**FIAT AUTO, S.p.A.,** et al.

**Civ. No. 82–503–D.**

United States District Court,
D. New Hampshire.

Aug. 8, 1983.

James C. Gahan, Jr., Boston, Mass., Seth M. Junkins, Hampton, N.H., for plaintiffs.

Leslie C. Nixon, Manchester, N.H., Michael P. Lehman, Concord, N.H., Mark A. Ash, Boston, Mass., for defendants.

## ORDER

DEVINE, Chief Judge.

In August 1979, Andreas Papafagos, then resident in Nashua, New Hampshire, purchased a new Fiat Strada motor vehicle from Cavanaugh Brothers Motors, Inc. ("Cavanaugh"), a New Hampshire incorporated retail motor vehicle dealer with a usual place of business in Manchester, New Hampshire. The vehicle had been manufactured in Italy by Fiat Auto, S.p.A. ("Fiat"), a motor vehicle manufacturer incorporated in Italy with its principal place of business in that country. In turn, the vehicle had been sold by Fiat to Fiat Motors of North America, Inc. ("Motors"), a New Jersey corporation with a principal place of business in Montvale, New Jersey.

Papafagos had the automobile shipped to Greece in September 1979, and he joined his family there for vacation purposes. In January 1980 Papafagos, his wife Kaliopi, and his minor son Demetrios all sustained injuries when the Fiat overturned and left the highway while they were occupants thereof. On return to this country in March 1980, plaintiffs discovered that Motors had caused to be mailed to their New Hampshire residence a "recall notice" which indicated that a defect in Fiats might possibly exist such as to cause a sudden "crash without prior warning".[1] Having moved to Massachusetts in April of 1980, Mr. and Mrs. Papafagos and their son commenced the instant action in this court in September 1982, naming as defendants therein Fiat, Motors, and Cavanaugh. The matter is currently before the Court on Fiat's motion seeking dismissal for lack of jurisdiction, Rule 12(b)(2), Fed.R.Civ.P.; and for improper venue, Rule 12(b)(3), Fed.R.Civ.P.[2]

The thrust of the claim as to lack of jurisdiction is the absence of contacts between Fiat and the forum, New Hampshire. Fiat points to the absence of the usual indicia of such contacts; that is, at times pertinent to this litigation it has never qualified to do business in New Hampshire, maintained therein any business or sales offices or telephones, owned any real or personal property in New Hampshire, or maintained bank accounts therein. Fiat also urges that as its automobiles are not sold to retail dealers in New Hampshire or delivered to that state and are only sold to Motors, with whose marketing and sales efforts Fiat does not interfere and with whom Fiat shares no employees, business records, or financial structure, it cannot be said to be present in New Hampshire for purposes of jurisdiction.

In determining the amenability to suit of a nonresident in a diversity action, a federal court must apply the law of the forum. *Hahn v. Vermont Law School*, 698 F.2d 48, 49 (1st Cir.1983). The relevant New Hampshire statute, RSA 293–A:121 (Supp.1981),[3] provides:

> If a foreign corporation makes a contract to be performed in whole or in part by either party in New Hampshire, or if the

---

1. In its resolution of the motion pending before it, the Court has carefully reviewed the affidavits of both parties and other documents, including the "vehicle order" and recall notice attached to plaintiffs' memorandum in opposition to the motion. It is well established that submission of such documents in connection with motions of the type here at issue do not convert the motion into one for summary judgment. *See Amoco Oil Company v. Local 99, International Brotherhood of Electrical Workers, et al.*, 536 F.Supp. 1203, 1210, n. 9 (D.R.I. 1982).

2. Although Fiat requests oral argument on its pending motion, the Court finds and rules that such is not required pursuant to the applicable provisions of Rule 11 and proceeds to resolution of the motion on the pleadings, documents, and legal memos with it filed.

3. Effective February 1, 1982, and therefore applicable to this action, RSA 293–A:121 replaced the former RSA 300:14, the former corporate "long-arm" statute, which is cited by and relied upon by counsel in these proceedings. As the text of both statutes is nearly identical, the authorities relied upon in the course of interpretation of RSA 300:14 are valid in these proceedings.

foreign corporation commits a tort in whole or in part in New Hampshire, the acts shall be deemed to be doing business in New Hampshire by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the state of New Hampshire and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of the contract or tort. The making of a contract or the committing of a tort shall be deemed to be the agreement of the foreign corporation that any process against it which is served upon the secretary of state shall be of the same legal force and effect as if served on the foreign corporation at its principal place of business in the state or country where it is incorporated and according to the law of that state or country.

The New Hampshire courts have construed this statute to allow the exercise of jurisdiction over foreign corporations to the full extent of the constitutional limit. *Cove-Craft Industries v. B.L. Armstrong Co. Ltd.,* 120 N.H. 195, 198, 412 A.2d 1028, 1030 (1980); *Engineering Associates v. B & L Liquidating Corporation,* 115 N.H. 508, 511, 345 A.2d 900, 902 (1975). Thereunder, the initial inquiry is whether the statutory requirements of jurisdiction have been met. *Town of Haverhill v. City Bank & Trust Company,* 119 N.H. 409, 402 A.2d 185 (1979). If so, inquiry then turns to whether defendant's contacts with the state are sufficient to satisfy the requirements of due process. *Cove-Craft Industries v. B.L. Armstrong Co. Ltd., supra,* 120 N.H. at 198, 412 A.2d at 1030.

This is a products liability action, and the New Hampshire Supreme Court has recently had occasion to consider in depth the rules of law to be applied to such cases. In considering the validity of a statute purporting to regulate products liability actions, the Court said:

The reasons for the evolution of the law in the area of products liability are many. We live in an era of national advertising and of nationwide distribution which can add or remove a product from our store shelves in a matter of days. Many of those nationally sold products contain chemical compounds and synthetics the side effects of which clearly cannot be anticipated. It is believed that if today's products are capable of causing illness or physical injury, the risk of liability is best borne by the companies that profited from their sale, rather than by the unfortunate individual consumers. *Buttrick v. Lessard,* 110 N.H. [36] at 39, 260 A.2d [111] at 113; *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 63–64, 377 P.2d 897, 901, 27 Cal.Rptr. 697, 701 (1963).

*Heath, et al. v. Sears, Roebuck & Co., et al.,* 123 N.H. ——, ——, ——, 464 A.2d 288, 293 (1983).

■ There can be little question that, fairly read, the pleadings in the instant action are to the effect that a tort was committed in part in New Hampshire as of the date that Mr. Papafagos picked up the defectively manufactured motor vehicle from Cavanaugh. That another part of the tort, the actual accident causing injury, occurred in Greece is of interest with respect to proof as to the circumstances of such accident, but it does not negate the finding here made that a tort was committed in part in New Hampshire by the delivery of a defectively manufactured vehicle herein. *See Dustin v. Cruise Craft, Inc.,* 487 F.Supp. 67, 69 (D.N.H.1980) (prima facie showing as to accrual of tort action within forum state sufficient to uphold jurisdiction).

Having held that the requirements of the long-arm statute with reference to personal jurisdiction have been met, we turn to the issue of the defendant's contacts with New Hampshire. These contacts must be such that the assertion of jurisdiction comports with "traditional notions of fair play and substantial justice", *International Shoe Company v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). *See*

*Commonwealth of Puerto Rico v. SS Zoe Colocotroni,* 628 F.2d 652, 657 (1st Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981).

Fiat, as do other automobile manufacturers, expects that its vehicles will be sold in other countries, including the varied states of the United States. While it does not choose to market its manufactured motor vehicle products through franchised dealers in each of the varied United States, as do American automobile manufacturers, but rather to sell them to American distributors, who in turn resell them to such dealers, it clearly is aware that its motor vehicles will be placed into the "stream-of-commerce", and as such that it can expect to be required to answer to any defects in such products wherever they may ultimately be consumed.

In a recent consideration of such circumstances, the Supreme Court stated:

When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson v. Denckla,* 357 U.S. [235] at 253 [78 S.Ct. 1228 at 1239, 2 L.Ed.2d 1283] it has clear notice that it is subject to suit there, and can act·to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. *Cf. Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961).

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980).

Admittedly dictum,[4] the above-quoted language from *World-Wide Volkswagen* has caused a number of courts in products liability cases wherein manufacturers of allegedly defective products seek to escape jurisdiction on the ground of lack of minimal contact with the forum state to adopt the "stream-of-commerce" theory of jurisdiction, which in turn has been defined as follows:

The stream-of-commerce theory developed as a means of sustaining jurisdiction in products liability cases in which the product had traveled through an extensive chain of distribution before reaching the ultimate consumer. Under this theory, a manufacturer may be held amenable to process in a forum in which its products are sold, even if the products were sold indirectly through importers or distributors with independent sales and marketing schemes. Courts have found the assumption of jurisdiction in these cases to be consistent with the due process requirements identified above: by increasing the distribution of its products through indirect sales within the forum, a manufacturer benefits legally from the protection provided by the laws of the forum state for its products, as well as economically from indirect sales to forum residents. Underlying the assumption of jurisdiction in these cases is the belief that the fairness requirements of due process do not extend so far as to permit a manufacturer to insulate itself from the reach of the forum state's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products.

*DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 285 (3d Cir.), *cert. denied,* 454 U.S.

---

**4.** Neither Audi, the manufacturer of the vehicle, nor Volkswagen, the importer thereof, had contested jurisdiction in *World-Wide Volkswagen v. Woodson, supra.*

1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981) (citation omitted).

In *Oswalt v. Scripto,* 616 F.2d 191 (5th Cir.1980), plaintiff brought action in Texas against a Japanese manufacturer of cigarette lighters and its American distributor to recover for injuries sustained by the alleged malfunction of the lighter. The Court held that the manufacturer, which had manufactured, assembled, sold and delivered millions of lighters to its distributor with the understanding that the distributor would sell them to a customer with national retail outlets, had reason to know or expect that the lighters would reach Texas in the course of distribution and was thus subject to *in personam* jurisdiction in Texas. *See also Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors, et al.,* 647 F.2d 200 (D.C.Cir.1981); *Rockwell International Corporation v. Costruzioni Aeronautiche Giovanni Agusta, et al.,* 553 F.Supp. 328 (E.D.Pa.1982); *Santiago v. BRS, Inc.,* 528 F.Supp. 755 (D.P.R.1981). Simply stated,

> a manufacturer or major distributor should not be allowed to profit from the sale of a product in a state while simultaneously insulating itself from liability by establishing an indirect and multi-faceted chain of distribution.... Simply because a business operation is structured in such a way as to avoid direct activity [in the forum state] would not prevent the state courts from imposing personal jurisdiction upon the nonresident defendant.

*Rockwell International Corporation v. Construzioni Aeronautiche Giovanni Agusta, supra,* 553 F.Supp. at 334 (citations omitted).[5]

Fiat's argument that the provisions of 28 U.S.C. § 1391(a) and (c) are here applicable is without merit. Fiat is admittedly an alien corporation, and, as such, venue is to be determined as to it by the provisions of 28 U.S.C. § 1391(d), which provides: "An alien may be sued in any district."

Construed to state "a principle of broad and overriding application", 28 U.S.C. § 1391(d), is "properly regarded . . . as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all federal venue laws, general and special". *Brunette Machine Works v. Kockum Industries, Inc.,* 406 U.S. 706, 714, 92 S.Ct. 1936, 1941, 32 L.Ed.2d 428 (1972). *See also Centronics Data Computer Corporation v. Mannesmann, A.G., supra,* 432 F.Supp. at 661. For the reasons hereinabove detailed, the motion of Fiat to dismiss grounded on lack of personal jurisdiction and improper venue must be and it is herewith denied. Defendant Fiat shall file its answer herein not later than 4 p.m. on Tuesday, August 30, 1983.

SO ORDERED.

---

**5.** The "stream-of-commerce" theory which we here hold to be the basis of personal jurisdiction over defendant Fiat has been previously adopted by this Court in somewhat similar context, albeit with reference to federal causes of action. *See Centronics Data Computer Corporation v. Mannesmann, A.G.,* 432 F.Supp. 659 (D.N.H.1977) (Bownes, J.).