**OMNI HOTELS MANAGEMENT CORPORATION**

v.

**ROUND HILL DEVELOPMENTS LIMITED.**

**Civ. No. 87–200–D.**

United States District Court, D. New Hampshire.

Dec. 17, 1987.

Sabin Willett, Concord, N.H., for plaintiff.

Marilyn L. Butler, Manchester, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

Plaintiff Omni Hotels Management Corporation ("Omni") (formerly the Dunfey Hotels Corporation), a Delaware corporation with its principal place of business in Hampton, New Hampshire, brings this diversity action against Round Hill Developments Limited ("Round Hill"), a Jamaican corporation with its principal place of business in Hopewell, Jamaica, West Indies, alleging that Round Hill breached management and marketing contracts it had entered into with Omni. Omni seeks compensatory damages of not less than $1.65 million and its costs and attorneys' fees. Jurisdiction is based on 28 U.S.C. § 1332, the parties being diverse and the amount in controversy exceeding $10,000 exclusive of interest and costs.

Round Hill contends that the Court may not properly assert personal jurisdiction

over it and moves for dismissal pursuant to Rule 12(b)(2), Fed.R.Civ.P. Omni objects. Both parties have submitted memoranda, affidavits, and exhibits to support their arguments, and, pursuant to the Court's Order of October 7, 1987, both parties have addressed the potential applicability of the doctrine of forum non conveniens. The issues being capable of resolution without oral hearing, the Court addresses the merits of Round Hill's motion on the documents as filed. *See* Rule 11(g). Rules of the United States District Court for the District of New Hampshire.

### Factual Background

Omni and Round Hill entered into two contracts on or about December 16, 1983. The avowed purpose of said contracts was to allow Round Hill to increase the profitability of its Jamaican resort hotel operation ("the complex") by tapping into Omni's expertise in the field of hotel marketing and management. *See* Affidavit of Roger S. Cline, Senior Vice President of Omni [hereinafter "Cline Aff."] ¶ 27. Reproduced as Exhibits A and B of the complaint, the two contracts are respectively entitled "Management Agreement" and "Marketing and Reservations Agreement" ("Marketing Agreement"). Pursuant to these agreements, Omni was to receive annual fees, incentive fees, and out-of-pocket expenses.

Under the Management Agreement, Omni was to have "absolute control and discretion in the management and operation of the complex." Complaint, Exhibit A, art. 3.2. The agreement contemplated, *inter alia*, that Omni would determine the retail prices for amenities offered to guests, set labor policies, negotiate leases and concessions, maintain financial records and control disbursement of revenues, determine and complete necessary repairs to the complex, and hire and fire employees. *Id.* In short, Omni was to perform all the tasks necessary to successfully operate the complex. The agreement specified that it was to be executed and delivered in Jamaica and "governed by and construed and interpreted in accordance with the laws of Jamaica." *Id.*, art. 23.2.

Whereas the Management Agreement focused on physical operation of the complex, the Marketing Agreement involved marketing and reservations services Omni was to provide within the United States in order to promote the use of the complex by United States residents. *Id.*, Exhibit B at 1–2. In essence, the Marketing Agreement envisioned that from its New Hampshire base of operations, Omni would advertise, solicit, and organize bookings in the United States for the Round Hill facility and would regularly provide budget forecasts to the complex's owners. *See id.* at 2; Cline Aff. ¶¶ 20, 22–23. The agreement stated that it was to be coterminous with the Management Agreement, Complaint, Exhibit B at 3, but contained no choice-of-law provision such as that found in the Management Agreement.

Omni alleges that it fully carried out its duties as set forth by both agreements and at all times was ready, willing, and able to perform future duties as required. Complaint ¶¶ 9–10. Omni further alleges that Round Hill unilaterally breached the agreements in 1984 by refusing to allow Omni to perform its obligations and by failing to pay contractual payments as due. *Id.* ¶ 11.

### Discussion

Round Hill's motion to dismiss raises the issue of whether the Court may properly assert personal jurisdiction over Round Hill pursuant to New Hampshire Revised Statutes Annotated ("RSA") 293–A:121 (Supp. 1986), the New Hampshire long-arm statute applicable to foreign corporations.

"[W]hen a court's personal jurisdiction over a defendant is contested, the plaintiff has the burden of showing that jurisdiction exists." *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 979 (1st Cir.1986) (citing, *e.g.*, *McNutt v. GMAC*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)). To meet this burden and avoid dismissal on jurisdictional grounds, a plaintiff need make only "a *prima facie* showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits." *Id.* (and citations therein). A plaintiff's written allegations of jurisdictional facts

are to be construed in the plaintiff's favor, *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 9 (1st Cir.1986), and a court may consider matters outside the pleadings such as affidavits and other evidentiary material without treating the motion to dismiss as a matter for summary judgment, *see, e.g., Papafagos v. Fiat Auto, S.p.A.*, 568 F.Supp. 692, 693 n. 1 (D.N.H.1983) (citing *Amoco Oil Co. v. Local 99, IBEW*, 536 F.Supp. 1203, 1210 n. 9 (D.R.I.1982) (*see* citations therein)); C. Wright & A. Miller, 5 *Federal Practice and Procedure* § 1364 (1969 & Supp.1987); *cf.* Rule 12(b), Fed.R.Civ.P. (last sentence) (outside materials not to be considered on Rule 12(b)(6) motion unless motion is treated as one for summary judgment).

*The Assertion of Personal Jurisdiction Over Round Hill*

In order to resolve long-arm jurisdictional issues, the Court applies a two-step analysis. The Court first considers whether the actions at issue fall within the requirements of the long-arm statute. If so, the Court then considers whether the nonresident defendant's contacts with New Hampshire satisfy due process concerns mandated by the Fourteenth Amendment to the United States Constitution. *Kowalski, supra*, 787 F.2d at 9–10; *Cove-Craft Indus. v. B.L. Armstrong Co.*, 120 N.H. 195, 198, 412 A.2d 1028, 1030 (1980). Before beginning this analysis, in the interest of clarification the Court addresses Omni's assertion that a two-step analysis is unnecessary.

On several occasions the New Hampshire Supreme Court has held that RSA 293–A:121 should be broadly construed and jurisdiction over foreign corporations allowed to the full extent of constitutional limits. *Computac, Inc. v. Dixie News Co.*, 124 N.H. 350, 355, 469 A.2d 1345, 1348 (1983); *Cove Craft Indus., supra*, 120 N.H. at 198, 412 A.2d at 1030; *Leeper v. Leeper*, 114 N.H. 294, 297, 319 A.2d 626, 628 (1974). Based on these holdings and on two recent decisions within this circuit, Omni contends that the Court need not consider as a matter of statutory construction whether the precise terms of RSA 293–A:121 are met,

but may proceed directly to the federal constitutional due process query. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss ["Omni Memo"] at 6–7 (citing *Ganis Corp. of Cal. v. Jackson*, 822 F.2d 194, 196–97 (1st Cir.1987); *Rhode Island Hosp. Trust Nat'l Bank v. San Gabriel Hydroelec. Partnership* [hereinafter "*Rhode Island Hospital*"] 667 F.Supp. 66, 68 (D.R.I.1987)). Omni's reliance on *Ganis* and *Rhode Island Hospital* to support its argument for a truncated analysis is misplaced because the two cases are based on state long-arm statutes (respectively, California's and Rhode Island's) which explicitly track federal due process law. *See Ganis Corp.*, 822 F.2d at 196 n. 5 (quoting Cal.Civ.Proc.Code § 410.10 (West 1973)) ("A court of this state may exercise jurisdiction on any basis not inconsistent with the constitution of this state or of the United States."); *Rhode Island Hospital*, at 68 (citing *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 401, 402, 252 A.2d 184, 185, 186 (1969) (in turn quoting R.I. Gen. Laws § 9–5–33 (1956) ("[F]oreign corporations and nonresident individuals having the necessary 'minimum contacts' with this state shall be subject to its jurisdiction, and ... amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States.")). In contrast, even while holding that jurisdiction over foreign corporations is to be allowed to the full extent of federal constitutional limits, the New Hampshire Supreme Court has required that the criteria of the state long-arm statute be met *before* federal due process issues are addressed. *See Cove–Craft Indus., supra*, 120 N.H. at 198, 412 A.2d at 1030; *Leeper, supra*, 114 N.H. at 297, 319 A.2d at 628. Therefore, this Court's analysis must begin with RSA 293–A:121.

■ RSA 293–A:121 provides in relevant part:

**Appointment of Process Agent by Foreign Corporation.** If a foreign corporation makes a contract *to be performed in whole or in part by either party in New Hampshire* ... the acts shall be deemed to be doing business in New Hampshire by the foreign corporation and shall be

deemed equivalent to the appointment by the foreign corporation of the secretary of the State of New Hampshire ... upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of the contract....

(Emphasis added.) The critical issue here is whether the Marketing and Management agreements constitute contracts which were to be performed in whole or in part by either party in New Hampshire. Actual performance is not a dispositive factor. Rather, the Court looks to whether the contract purposefully creates continuing obligations between the contracting parties; if agreements contemplate that duties will be performed or obligations incurred in New Hampshire, a contractual breach which prevents performance will not preclude the assertion of personal jurisdiction. *See Burger King v. Rudzewicz,* 471 U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985); *Ganis Corp., supra,* 822 F.2d at 197–98; *Rhode Island Hospital,* at 69.

 With respect to the Management Agreement, numerous duties delineated in its provisions contemplate performance by staff employed by Omni in its Hampton, New Hampshire, headquarters. *See* Cline Aff. ¶ 25(i)–(xv). Some of such duties include, for example, maintenance of financial records and the control and disbursement of revenues, *id.* ¶ 25(iii) (referring to Complaint, Exhibit A, art. 3.3); implementation and administration of a credit card system, *id.* ¶ 25(iv) (referring to Complaint, Exhibit A, art. 5.2); generation of financial reports to Round Hill's Board of Directors, *id.* ¶ 25(vii)–(x) (referring to Complaint, Exhibit A, art. 8), and inclusion and maintenance of insurance coverage on the complex, such coverage to be included in already extant blanket policies maintained by Omni on other Omni-owned or Omni-managed facilities, *id.* ¶ 25(xi) (referring to Complaint, Exhibit A, arts. 10.1, 10.3). In addition, Article 23.1 of the Management Agreement specifically provides that notices directed to the manager of the complex are to be sent to Omni's New Hampshire headquarters.

As to the Marketing Agreement, it specifies that Round Hill "desires to have [Omni] perform certain marketing services in the United States in order to promote the use of the [complex] by United States' residents," Complaint, Exhibit B at 1, and that Round Hill is to receive "the full benefit and advantages of a recognized reservations system for the [complex], in the United States," *id.* at 2. The agreement also specifies mutual obligations: that Omni is obligated to provide annual marketing plans to Round Hill, and that Round Hill is to make monthly payments to Omni, in advance, for services rendered under the terms of the contract. *Id.* at 1–2. The agreement explicitly recognizes that Omni's headquarters is located in New Hampshire. *Id.* at 1.

In sum, it is beyond cavil that at least some of the duties envisioned by the Management and the Marketing Agreements were "to be performed in whole or in part by either party in New Hampshire." As such, the two agreements fall within the purview of RSA 293–A:121. Having found that the agreements meet the requirements of the New Hampshire long-arm statute, the Court must consider whether the assertion of personal jurisdiction over Round Hill comports with constitutional due process requirements.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits a state's power to assert personal jurisdiction over nonresident defendants. *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984) (citing *Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877)). Defendants are thus not subject to the judgments of states with whom the defendants have had no meaningful "contacts, ties, or relations." *Burger King, supra,* 471 U.S. at 471–72, 105 S.Ct. at 2182. In order for a court to assert personal jurisdiction over a nonresident corporate defendant, the defendant must have had "certain minimum contacts with [the forum] such that the maintenance of suit does not offend traditional notions of fair play and substantial justice." *Helicopteros, supra,* 466 U.S. at 414, 104 S.Ct.

at 1872 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

Initially, it must be established that the defendant's activities were "purposefully directed" toward residents of the forum state. *Burger King, supra,* 471 U.S. at 473–75, 105 S.Ct. at 2182–83 (and citations therein). The defendant's conduct should bear such a " 'substantial connection' to the forum state" that the defendant "should reasonably anticipate being haled into court there," *id.* (citing, *e.g., World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)), and the litigation must result from alleged injuries that "arise out of or relate to" the activities of the defendant in the forum which are at issue, *id.* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *Helicopteros, supra,* 466 U.S. at 414, 104 S.Ct. at 1872).

■ A contractual agreement between a resident and a nonresident is, standing alone, insufficient to establish minimum contacts. *Id.* 471 U.S. at 478, 105 S.Ct. at 2185. To determine whether Round Hill purposefully established "minimum contacts" with the state of New Hampshire, the Court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479, 105 S.Ct. at 2186. In the instant case, contractual language *and* evidence of prior negotiations provide evidence that Round Hill explicitly recognized Omni's New Hampshire base of operations and that performance of the agreements would entail involvement by Omni personnel within New Hampshire. *See* Exhibit A, art. 23.1; Exhibit B at 1; Cline Aff. ¶ 10. For example, evidence has been presented that on May 30, 1984, Jamaican–based Round Hill employees traveled to Omni's Hampton, New Hampshire, offices to participate in a day-long meeting regarding the contracts at issue here. Affidavit of John M. Bolis, Omni Senior Vice–President and General Counsel [hereinafter "Bolis Aff."] ¶ 9; *see also* Plaintiff's Memorandum of Law on the Doctrine of Forum Non

Conveniens, Exhibit A (typed agenda of May 30 visit). Additionally, numerous letters passed between the parties during these negotiations. *See Ealing Corp. v. Harrods Ltd., supra,* 790 F.2d at 983–84; *and see, e.g.,* Cline Aff. Exhibits C to M.

Furthermore, the Supreme Court has stated:

> where the defendant 'deliberately' has ... created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the 'benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King, supra,* 471 U.S. at 475–76, 105 S.Ct. at 2184 (citations omitted); *see also id.* at 480, 105 S.Ct. at 2186. The agreements at issue here not only envisioned significant involvement by personnel from various departments within the Omni organization, but also envisioned a ten-year, long-term, *continuous* business relationship between the parties, with far-reaching consequences for the future of the Round Hill complex. The contractual documents and the parties' course of dealing provided notice to Round Hill that it might reasonably be haled into court in this jurisdiction. *Id.* at 487, 105 S.Ct. at 2190. And, accepting as true the complaint's allegations that Round Hill breached contractual obligations, Round Hill should have foreseen that damage resulting therefrom would occur at Omni's principal place of business: New Hampshire. *See id.* at 480, 105 S.Ct. at 2186.

In short, Round Hill purposefully directed substantial activities toward this forum in the course of negotiating its long-term contractual agreements with Omni. That conduct and connection with this forum constitute constitutionally requisite "minimum contacts" with New Hampshire.

■ Purposefully directed minimum contacts notwithstanding, litigation in this forum may not be forced upon Round Hill if litigation here would be "so gravely diffi-

cult and inconvenient" that Round Hill would "unfairly be at a severe disadvantage" in comparison to Omni. *See id.* at 478, 105 S.Ct. at 2185 (and citations therein). The Court must determine whether maintenance of suit here would offend "traditional notions of fair play and substantial justice." *International Shoe Co., supra,* 326 U.S. at 320, 66 S.Ct. at 160. This determination involves consideration of:

> 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'

*Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184 (quoting *World–Wide Volkswagen, supra,* 444 U.S. at 292, 100 S.Ct. at 564); *see also Asahi Metal Ind. v. Superior Ct. of Cal., Solano County,* —— U.S. ——, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (majority opinion). Round Hill faces a heavy burden in this analysis, for "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King, supra,* 471 U.S. at 477, 105 S.Ct. at 2185.

Round Hill asserts that it would be unduly burdened by having to defend in New Hampshire because "many of the witnesses to Round Hill's part of the controversy are in Jamaica or other remote locations, and none of them reside in New Hampshire." Defendant's Memorandum of Law in Support of Its Motion to Dismiss, at 14. However, Round Hill is specific only as to the identity of three such witnesses. Defendant's Memorandum of Law on the Doctrine of Forum Non Conveniens [hereinafter "Round Hill Forum Memo"]. Round Hill does not dispute Omni's assertions that fourteen out of the fifteen members of Round Hill's Board of Directors are citizens and residents of the United States, Affidavit of H. Martin Payne, Jamaican

attorney at law, Exhibit A at 6 (1985 annual filing with Jamaican Registrar of Companies showing particulars of company directors), and that the Round Hill Board of Directors has held meetings within the United States, Cline Aff. ¶ 28 & attached Exhibit N.

Balanced against Round Hill's allegations of the burden it will face by having to litigate in this forum are the interests of the forum and the plaintiff. It is "beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State." *Keeton v. Hustler,* 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984) (quoting *Leeper, supra,* 114 N.H. at 298, 319 A.2d at 629); *see also McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (state frequently will have a "manifest interest in providing effective means of redress for its residents"). As to Omni's interest in obtaining relief in this jurisdiction, Omni alleges it has suffered great damage from Round Hill's alleged breach of contractual agreements, and that in order to adequately present its case it will need to call at trial a minimum of fifteen witnesses who are presently located at its New Hampshire headquarters. *See* Bolis Aff. ¶ 5. Omni further avers that it will need to present at trial approximately ten other witnesses who are United States residents, only some of whom are still employed by Omni. *Id.* ¶ 7–8. Omni is specific as to the names of the above-mentioned twenty-five witnesses, the subject of their testimony, and in what respect each person's testimony is relevant. *Id.* at 5–8. Omni states that it currently has no plans to call any Jamaican witnesses. *Id.* ¶ 12.

To conclude, although the Court recognizes that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," *Asahi Metal Ind., supra,* 107 S.Ct. at 1035, because this action is based on a contractual relationship embodying a substantial connection with this forum, the Court finds that the contacts of Round Hill satisfy the due process concerns associated

with the assertion of personal jurisdiction, *see McGee v. International Life Ins. Co., supra*, 355 U.S. at 223, 78 S.Ct. at 201. Having carefully weighed all pertinent factors, the Court therefore holds that it may exercise personal jurisdiction over Round Hill in this action consonant with due process of law.

### The Applicability of the Doctrine of Forum Non Conveniens

■■■ As stated previously, the Management Agreement specifies it is to be "governed by and construed and interpreted in accordance with the laws of Jamaica." Complaint Exhibit A, art. 23.2. The need to apply foreign law does not ineluctably point to dismissal if a balancing of relevant factors indicates a plaintiff's choice of forum is appropriate. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 & n. 29, 102 S.Ct. 252, 268 & n. 29, 70 L.Ed.2d 419 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982). However, "[t]here is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *cf. Piper Aircraft Co., supra*, 454 U.S. at 260 & n. 29, 102 S.Ct. at 268 & n. 29. Mindful of these dichotomous considerations and of the significance of the Management Agreement's choice of Jamaican law, on October 7, 1987, the Court ordered Round Hill to address the potential applicability of the doctrine of forum non conveniens to this action. Round Hill did so, Omni responded, and the Court now addresses the issue.

The Supreme Court has held that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp., supra*, 330 U.S. at 508, 67 S.Ct. at 843. Transfer is inappropriate if the effect is merely to shift inconvenience from the defendant to the plaintiff. *See, e.g., Peterson v. U.S. Steel Corp.*, 624 F.Supp. 44, 45 (N.D.Ill.1985). And conclusory allegations

of need as to unnamed witnesses and unspecified evidentiary materials are insufficient to establish the clear showing mandated by *Gulf Oil Corp.* that a balancing of conveniences *strongly* favors forum non conveniens dismissal. *See, e.g., Gulf Oil, supra*, 330 U.S. at 510–11, 67 S.Ct. at 843–44; *cf. J.I. Kislak Mortgage Corp. v. Connecticut Bank & Trust*, 604 F.Supp. 346, 348 (S.D. Fla.1985) (citing, *e.g.*, C. Wright, A. Miller & E. Cooper, 15 *Federal Practice and Procedure* § 3851, at 271 (1976) [current version at 424–32 (2d ed. 1986)] (same proposition applicable to motions for transfer pursuant to 28 U.S.C. § 1404(a)).

Round Hill identifies by name only three Jamaican witnesses whom it will allegedly need to call at trial, stating in addition that it *"may* have a need to call" its accountants and lawyers. Round Hill Forum Memo at 7–8 (emphasis added). Round Hill specifies neither the nature nor the estimated total number of documents it would need to transport from Jamaica if trial were had in New Hampshire.

In contrast, Omni's principal place of business and headquarters is in New Hampshire, and Omni alleges it will need to call at trial at least fifteen witnesses who are presently located there. Bolis Aff. ¶ 5. Omni also alleges it will need to present approximately ten other fact witnesses who are United States residents, only some of whom are employed by the company, and expert witnesses who are United States residents and who are familiar with American hotel marketing and sales. *Id.* ¶¶ 7–8, 11. Finally, in his affidavit, Omni Vice President Bolis points out that "virtually all" of the documentation necessary to prove Omni's case is located in Hampton. *Id.* ¶ 6. Thus, even if Round Hill would incur hardship in transporting its witnesses and documentary evidence to New Hampshire, it has not shown that by so doing it would incur significantly greater hardship than Omni would face in having to bring the action in Jamaica.

Furthermore, the interests of justice militate against dismissal. This litigation focuses on agreements which contemplate performance in New Hampshire as well as

Jamaica. As stated above, New Hampshire has a significant interest in providing a forum for the redress of injuries which allegedly occurred within the state. *Keeton v. Hustler, supra;* N.H. Const. pt. 1, art. 14. Although Round Hill primarily argues in its memorandum that dismissal under forum non conveniens is warranted because the Court will need to apply Jamaican law in order to resolve the issues raised by this litigation, Round Hill has set forth no evidence establishing, or even alleging, that Jamaican contract law differs from New Hampshire contract law with regard to the instant action. Furthermore, the Court is mindful that "the need to apply foreign law is not in itself reason to apply the doctrine of *forum non conveniens.*" *Schexnider v. McDermott Int'l,* 817 F.2d 1159, 1163–64 (5th Cir.), *reh'g denied,* 824 F.2d 972 (5th Cir.1987), *cert. filed* (Oct. 13, 1987); *Manu Int'l v. Avon Prod.,* 641 F.2d 62, 68 (2d Cir.1981) ("We must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform.").

In essence, Round Hill has made no showing that the application of Jamaican law by this Court would present such "extreme and abnormal difficulties" as would warrant dismissal, *see Tramp Oil & Marine v. M/V Mermaid I,* 743 F.2d 48, 52 (1st Cir.1984) (citing *Piper Aircraft, supra,* 454 U.S. at 243, 102 S.Ct. at 259), that the balance of conveniences is strongly in its favor, or that the interests of justice would be better served by adjudicating this dispute in Jamaica rather than New Hampshire. Accordingly, the Court sees no reason to disturb Omni's choice of forum.

### Conclusion

For the reasons set forth above, the Court finds that it may properly assert personal jurisdiction over Round Hill in this litigation. The Court further finds that although resolution of the issues raised by this suit will involve application of Jamaican law, dismissal of the action is not warranted pursuant to the doctrine of forum non conveniens. Defendant Round Hill's motion to dismiss for lack of personal juris-diction (document no. 6) is accordingly denied.

SO ORDERED.