**CROSFIELD HASTECH, INC.**

v.

**HARRIS CORPORATION, Randolph W. Duerr.**

**Civ. No. 87–90–D.**

United States District Court, D. New Hampshire.

Nov. 10, 1987.

Michael Lenehan, Concord, N.H., and Lawrence F. Scinto, New York City, for plaintiff.

George R. Moore and Matthias J. Reynolds, Manchester, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

By way of a seven-count amended complaint, plaintiff Crosfield Hastech, Inc. ("CHI"), a designer, developer, manufacturer, and marketer of computer hardware and software for the newspaper publishing industry, brings this action against a former employee, Randolph W. Duerr ("Duerr"), and Harris Corporation ("Harris"), Duerr's current employer and CHI's business competitor. Suit is brought for copyright infringement (Counts I and II), misappropriation and theft of trade secrets and unfair competition (Count III), breach of contractual and fiduciary obligations (Counts IV and V), inducing breach of such obligations and tortious interference with an employer/employee relationship (Count VI), and a declaratory judgment (Count VII).[1] CHI seeks, inter alia, injunctive relief, future inspection privileges of Harris's facilities under Court supervision to insure compliance with said injunctive relief, stat-

utory damages, actual and enhanced compensatory damages, costs, attorneys' fees, and a declaratory judgment as to the invalidity and noninfringement of a Harris patent which Harris charges CHI with infringing.

At bar are nine motions.

In six motions, Harris and Duerr each move for: (1) dismissal of the original and the amended complaints and of subsequent document requests on the basis that the Court lacks personal jurisdiction ["Jurisdiction Motions"] (document nos. 14 and 17, respectively); (2) transfer of the action to the Middle District of Florida pursuant to federal venue provisions found at 28 U.S.C. § 1400(a) relating specifically to copyright actions ["Copyright Venue Motions"] (document nos. 16 and 19, respectively); and (3) transfer of the action to the Middle District of Florida based on the change of venue provisions found at 28 U.S.C. § 1404(a) and the doctrine of forum non conveniens ("Forum Motions") (document nos. 15 and 18, respectively). Attached to each of these motions are duplicate copies of two affidavits: one by Dale A. Normington, Harris's Senior Counsel, Litigation and Products Liability ["Normington Affidavit"]; the other by Duerr ["Duerr Affidavit"].

CHI objects separately to each motion, supporting its objections with one legal memorandum, Plaintiff's Combined Memorandum in Opposition to Defendants' Motions to Dismiss and to Transfer ["Plaintiff's Combined Memo"]. In conjunction with its Combined Memo, CHI has submitted the affidavit of R. Bruce Wilson, Vice–President of CHI ["Wilson Affidavit"].

Harris and Duerr also jointly present the Court with three nonjurisdictional motions. First, they move the Court to strike the Wilson Affidavit or, alternatively, to order

---

**1.** Counts I and II are brought pursuant to the Copyrights Act, 17 U.S.C. § 101, *et seq.*, jurisdiction of the Court being alleged by way of 28 U.S.C. §§ 1331 and 1338(a); Count III asserts common law rights and protections against misappropriation and theft of trade secrets and unfair competition, jurisdiction alleged via 28 U.S.C. § 1338(b); Counts III, IV, V, and VI are brought pursuant to common and statutory

state law under the doctrine of pendent jurisdiction, *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1133, 16 L.Ed.2d 218 (1966); and Count VII seeks a declaratory judgment, 28 U.S.C. §§ 2201 and 2202, jurisdiction being invoked pursuant to 28 U.S.C. § 1338(a). CHI contends that venue is correct in this judicial district by way of 28 U.S.C. §§ 1391(b) and 1400(a).

CHI to produce better documentation in support of Mr. Wilson's attestations ["Motion to Strike"] (document no. 28). Second, they move for permission to file a response memorandum to Plaintiff's Combined Memo, to be filed within ten days of either an adverse ruling on their Motion to Strike or CHI's submission of further documentation to support the Wilson Affidavit ["Motion to File Response Memorandum"] (document no. 29). And third, they move for the Court to order production of (1) Duerr's employment contract with CHI,[2] and (2) specific information as to which corporate entities within CHI's parent and subsidiary corporate structure have been damaged, and to what degree, by the events herein at issue ["Production Motion"] (document no. 32).

### Factual Background

As stated previously, CHI is in the business of designing, developing, manufacturing, and marketing computer hardware and software for the newspaper publishing industry. CHI's principal place of business is located in Manchester, New Hampshire. Amended Complaint ¶ 1.

As part of its sales efforts, CHI manufactures and markets a computer publishing system called "PagePro", which consists of computer hardware, software, and related documentation such as the system's operating manual. CHI has allegedly achieved substantial sales of this system since its market introduction in 1981, and alleges that much of the company's success is due to the capability of PagePro to satisfy customer needs concerning the automatic pagination of advertisements and news. *Id.* ¶¶ 15–16. The PagePro software is integral to the PagePro system and was developed by CHI through the expenditure of "substantial time, effort, and expense." *Id.* ¶ 16.

CHI employed Duerr from April 1972 to March 1982. During this ten-year period, Duerr held the positions of Programmer Analyst and Senior Member of the Technical Staff; beginning in 1977 and until he resigned, he was the lead programmer for the project under which PagePro was developed. As lead programmer, Duerr had "principal" responsibility for designing and developing the PagePro software and allegedly had personal knowledge of or access to confidential and proprietary information relating to the software's design and implementation. *Id.* ¶ 17.

In connection with his employment, Duerr entered into proprietary information agreements with CHI. These agreements, entitled "Patent, Copyright, Disclosure and Conflict of Interest Agreements" ["Agreements"], provide in parts pertinent to this litigation that Duerr assigned to CHI all his interests and rights in discoveries made during the course of his employment, within the scope of CHI's business, or stemming from work undertaken on company behalf, and that Duerr

> [would] not [during his employment with CHI] or thereafter at any time disclose to others or use for [his] own benefit any Company Private data, i.e. trade secrets or confidential information, pertaining to any of the businesses of [CHI or any] of its customers, representatives, agents, consultants, licensees, or affiliates, acquired by [him] during the period of [his] employment, except to such an extent as may be necessary in the ordinary course of performing [his] particular duties. . . .

*Id.* ¶ 18.

In March 1982 Duerr resigned from his position at CHI and began employment with Harris, a company roughly one hundred times the size of CHI with thirty-six plants, approximately 325 offices in the United States, Canada, Europe, Latin America, and Asia, more than 26,000 employees, and 1986 revenues of approximately $2.2 billion. Combined Memo at 6; Wilson Affidavit ¶ 12; *see also* Combined Memo Exhibit B at 2 (1986 Harris Corporation SEC Form 10–K Annual Report). Approximately two years later, the Harris Information Systems group—the National

---

2. CHI is the successor corporation to the corporation Hastech, Inc., and, before that, the corporation Hendrix Electronics, Inc. Those predecessor companies and prior corporate titles are included in the Court's references to "CHI".

Accounts Division of which is allegedly located in Nashua, New Hampshire, and Dallas, Texas, Wilson Affidavit ¶ 13—began manufacturing and marketing a computer publishing system competitive to PagePro, called the "Harris 8300" system ("8300").

CHI alleges that Duerr was responsible for the design and implementation of the 8300 software and operating manuals and that his work on the 8300 improperly relied upon, utilized, and in large part copied confidential and proprietry information relating to PagePro. *See, e.g.,* Amended Complaint ¶¶ 19, 26–27, 32–33. CHI further alleges that since Harris began shipping 8300 systems in 1984 the company has sold a substantial number of systems, *id.* ¶ 20, and that Harris's continued utilization of Duerr's knowledge of CHI's confidential information threatens CHI's preeminence in the newspaper publishing computer market, *id.* ¶ 36. Finally, CHI alleges that Harris's headhunting of Duerr was not serendipitous; that Harris hired Duerr, fully aware that he was subject to noncompetition and nondisclosure agreements, in order to obtain access to the confidential information he possessed. *Id.* ¶¶ 54–56.

Duerr is currently employed by Harris at its main office and headquarters in Melbourne, Florida, as Principal Engineeer–Software Systems. Duerr Affidavit ¶ 1. Duerr avers that his employment with Harris does not require him to travel to New Hampshire, that he has only been in New Hampshire twice for a total of four days since he departed CHI's employ, both times for reasons unrelated to the matters herein at issue, and that having to travel to New Hampshire to appear in court would place a substantial burden upon him personally and in regard to duties engendered by his employment. *Id.* ¶¶ 7–9.

### Discussion

■ The first six of defendants' nine motions go to the question of whether the Court may properly assert jurisdiction over this action. In connection with said motions, the Court faces three issues: (1) whether the Court may assert personal jurisdiction over the defendants, (2) whether

venue is proper in this district, and (3) whether, if jurisdiction may be asserted and venue is proper in this district, the action should nonetheless be transferred to another district under the doctrine of forum non conveniens. The Court addresses these issues in the order given, as "[the] question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2715, 61 L.Ed.2d 464 (1979) (citing C. Wright, A. Miller & E. Cooper, 15 *Federal Practice and Procedure* ¶ 3801, at 5–6 (1976)).

■ "[W]hen a court's personal jurisdiction over a defendant is contested, the plaintiff has the burden of showing that jurisdiction exists." *Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978, 979 (1st Cir.1986) (citing *McNutt v. GMAC,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)). To meet this burden and thus avoid dismissal on jurisdictional grounds, a plaintiff need make only "a *prima facie* showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits." *Id.* (and citations therein). In resolving whether dismissal on jurisdictional grounds is warranted, a court may consider "speaking motions" (i.e., motions accompanied by matters outside the pleadings such as affidavits and other evidentiary material) without treating the motion to dismiss as a matter for summary judgment. *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976); *Papafagos v. Fiat Auto, S.p.A.,* 568 F.Supp. 692, 693 n. 1 (D.N.H.1983) (citing *Amoco Oil Co. v. Local 99, International Bhd. of Elec. Workers,* 536 F.Supp. 1203, 1210 n. 9 (D.R.I.1982) (*see* citations therein)); C. Wright & A. Miller, 5 *Federal Practice and Procedure* § 1364 (1969 & Supp.1987); *cf.* Rule 12(b), Fed.R.Civ.P. (last sentence) (outside materials not to be considered on Rule 12(b)(6) motion to dismiss unless motion is treated as one for summary judgment). A plaintiff's written allegations of jurisdictional facts are to be construed in the plaintiff's favor. *Kowal-*

*ski v. Doherty, Wallace, Pillsbury & Murphy,* 787 F.2d 7, 9 (1st Cir.1986).

### Motions to Dismiss for Lack of Personal Jurisdiction

Harris argues that the Court lacks personal jurisdiction because CHI has failed to show that Harris is subject to New Hampshire Revised Statutes Annotated ("RSA") 293–A:121 (Supp.1986), the New Hampshire long-arm statute applicable to service of process on foreign corporations. In essence, RSA 293–A:121 provides that the acts of a foreign corporation in either making a contract to be performed within New Hampshire or committing a tort in New Hampshire constitute appointment of the Secretary of State as the corporation's agent, upon whom process may be served in connection with actions arising out of the contract or tort.[3] Harris's argument fails because RSA 293–A:119 I (Supp.1986) is the applicable jurisdictional statute, not RSA 293–A:121.

■ If a foreign corporation maintains a registered agent in New Hampshire, RSA 293–A:119 I allows service of process upon the corporation through that agent. Harris has admitted that it has a registered agent within the State of New Hampshire, CT Corporation, and that CT was properly served with the Amended Complaint. Harris Jurisdiction Motion ¶ 2. "It is well-settled that a corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent's authority." *Holloway v. Wright & Morrissey, Inc.,* 739 F.2d 695, 697 (1st Cir.1984). Having appointed CT as its registered agent, and having failed to assert that it was beyond CT's

scope of authority to accept service on Harris's behalf, Harris has consented to the Court's exercise of personal jurisdiction over it under RSA 293–A:119 I, regardless of the provisions of RSA 293–A:121. *See Holloway, supra,* 739 F.2d at 697–98 ("[W]e conclude that the New Hampshire legislature did not intend to restrict the applicability of § 293–A:119 to cases in which service of process is authorized by the long-arm statute."). Accordingly, Harris's motion to dismiss for lack of personal jurisdiction (document no. 14) must be denied.

■ In order to resolve whether the Court may properly assert personal jurisdiction over Duerr, the Court applies a two-step analysis, considering: (1) whether the statutory requirements of RSA 510:4 I (1983), the New Hampshire long-arm statute applicable to nonresident individuals, have been satisfied, and (2) if so, whether Duerr's contacts with New Hampshire are sufficient to meet basic due process concerns mandated by the United States Constitution. *Kowalski, supra,* 787 F.2d at 9–10; *Hahn v. Vermont Law School,* 698 F.2d 48, 49–50 (1st Cir.1983); *Cove–Craft Indus. v. B.L. Armstrong Co.,* 120 N.H. 195, 198, 412 A.2d 1028, 1030 (1980). Duerr asserts that his contacts with New Hampshire do not satisfy either part of this analysis.

RSA 510:4 I provides:

I. JURISDICTION. Any person who is not an inhabitant of this state and who, in person or through an agent, *transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state* submits himself, or his person-

---

**3.** Although failing to address the point in its memorandum, in its motion Harris argues that the action should also be dismissed because the original complaint was served on Prentice–Hall Corporation rather than CT Corporation ("CT"), Harris's registered agent in New Hampshire. Harris Jurisdiction Motion at 2–3. Inasmuch as Harris admits that the Amended Complaint was properly served on CT, *id.* ¶ 2, any error arising from the first, incorrect service of process is cured. *See, e.g., Cambridge Mut. Fire Ins. v. City*

*of Claxton, Ga.,* 96 F.R.D. 175, 178 (S.D.Ga. 1982), *aff'd,* 720 F.2d 1230 (11th Cir.1983); J. Moore, J. Lucas, H. Fink & C. Thompson, 2 *Moore's Federal Practice* ¶ 4.06, at 4–91 & n. 4 (2d ed. 1987); *cf.* Annotation, *Construction of Federal Civil Procedure Rule 4(h) Dealing with Amendment of Process or Proof of Service,* 2 A.L.R.Fed. 513 (1969 & Supp.1986) (amendment allowed unless material prejudice to receiving party).

al representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

(Emphasis added.) The New Hampshire Supreme Court has held that RSA 510:4 I "must 'be construed in the broadest legal sense to encompass personal, private and commercial transactions.'" *Hall, Morse, Gallagher & Anderson v. Koch & Koch,* 119 N.H. 639, 644, 406 A.2d 962, 965 (1979) (quoting *Leeper v. Leeper,* 114 N.H. 294, 297, 319 A.2d 626, 628 (1974)). Although jurisdiction vests if *any* of the three acts enumerated in the statute are present, *see, e.g., id.; Kinchla v. Baumner,* 114 N.H. 818, 819–21, 330 A.2d 112, 113–14 (1974), in the instant action *all three* grounds are satisfied.

First, Duerr transacted business in New Hampshire. It is unrefuted that Duerr was employed by CHI in New Hampshire in a position of significant responsibility for a period of approximately ten years. It is also unrefuted that during this time he received income and, presumably, other employment benefits. In addition, Duerr admits that as a prerequisite to employment with CHI he signed a proprietary information agreement, i.e., a contract. Duerr Jurisdiction Memorandum at 6. These activities are clearly related to business, not pleasure; viewed in the "broadest legal sense", they constitute transacting business. *See, e.g., Leeper, supra,* 114 N.H. at 297, 319 A.2d at 628.

As to the second potential base ior application of RSA 510:4 I—tortious injury—Duerr concedes that CHI's claims for copyright infringement and theft of trade secrets sound in tort. However, Duerr argues that RSA 510:4 I is inapplicable because the action does not arise from either tortious injury or tortious actions occurring *within the state. Id.* at 2–4. Duerr's argument is without merit. The Court must take the allegations of the complaint and all reasonable inferences to be drawn therefrom as true, and construe those allegations in the light most favorable to CHI. *Leeper, supra,* 114 N.H. at 297, 319 A.2d at 628. In the instant matter, the causes of action set forth in the complaint allege

that both tortious injury (e.g., loss of proprietary material, lost sales) and tortious activity by Duerr (e.g., theft of proprietary material, breach of fiduciary duty) occurred within New Hampshire. *See, e.g.,* Amended Complaint ¶¶ 19, 28, 34, 39, 41, 43, 46. Thus, the allegations of the complaint sounding in tort bring the action within the purview of the statute. *See Tavoularis v. Womer,* 123 N.H. 423, 425–26, 462 A.2d 110, 112 (1983); *Hutchings v. Lee,* 119 N.H. 85, 87, 398 A.2d 68, 69–70 (1979).

Finally, the complaint alleges that Duerr had possession of CHI's personal property —trade secrets—while in the company's employ. *See* Amended Complaint ¶¶ 17, 38. Inasmuch as the causes of action herein asserted against Duerr flow directly from his alleged possession and subsequent misappropriation of proprietary material, the third alternative ground for asserting RSA 510:4 I is satisfied. *See Hutchings v. Lee, supra,* 119 N.H. at 87, 398 A.2d at 69–70.

Having established that Duerr's activities are sufficient to satisfy RSA 510:4 I, the Court must next determine whether the assertion of personal jurisdiction over Duerr would comport with the due process requirements of the United States Constitution, the Fourteenth Amendment of which limits the power of a state to assert personal jurisdiction over a nonresident defendant. *Asahi Metal Ind. Co. v. Superior Ct. of Cal., Solano County,* —— U.S. ——, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987); *Pennoyer v. Neff,* 95 U.S. 714, 722–23, 24 L.Ed. 565 (1877). As set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, a two-party analysis must be satisfied if this Court is to assert personal jurisdiction without offending due process requirements. First, CHI must establish that Duerr *purposefully* availed himself of the privilege of conducting activities within New Hampshire, thus invoking the benefits and protections of New Hampshire's law to the degree that he should have reasonably anticipated being haled into court here. *Asahi Metal Ind., supra,* 107 S.Ct. at 1031–33 (citing, *e.g., Hanson v.*

*Denkla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed. 2d 490 (1980)). Second, Duerr must have had at least certain "minimum contacts" with New Hampshire such that maintenance of suit against him in this forum does not offend "traditional notions of fair play and substantial justice." *Id.* at 1033 (quoting *International Shoe Co., supra,* 326 U.S. at 316, 66 S.Ct. at 158); *see also Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984). These due process requirements serve two salutary purposes: first, nonresident defendants are protected from having to litigate in inconvenient forums in which they have done nothing to justify the assertion of personal jurisdiction over them, and second, states are foreclosed from extending their jurisdiction beyond their individual areas of legitimate interest, insuring that they accord each other the mutual respect implicit in our system of federalism. *Van Buskirk v. Carey Canadian Mines,* 760 F.2d 481, 490 (3d Cir.1985) (citing *World–Wide Volkswagen, supra,* 444 U.S. at 291, 100 S.Ct. at 564).

Whether a defendant's minimum contacts with a forum are such that personal jurisdiction may be reasonably asserted depends upon three factors: "the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." *Asahi Metal Inc., supra,* 107 S.Ct. at 1034; *World–Wide Volkswagen, supra,* 444 U.S. at 292, 100 S.Ct. at 564.

By seeking and accepting employment in New Hampshire, Duerr purposefully availed himself of the benefits and protections of New Hampshire laws and the privilege of conducting his activities here. Duerr was employed in the state for a significant period of time, his work was conducted within the state, and, presumably, defendants not asserting otherwise, his remuneration was paid to him in the state. His contractual and fiduciary obligations were entered into while he was in New Hampshire. The level to which he complied (or failed to comply) with his em-ployment-based obligations provides the focus of this litigation. And, accepting as true the allegations of the complaint, Duerr's misappropriation of his employer's property and breaches of his contractual and fiduciary obligations first occurred while he was still in New Hampshire. Thus, Duerr should have reasonably anticipated that any litigation arising out of his employment would be brought in a New Hampshire court. *Inter–Collegiate Press v. Myers,* 519 F.Supp. 765, 769 (D.Kan. 1981). Furthermore, accepting as true the complaint's allegations, Duerr should have foreseen that damage resulting from his acts—CHI's lost sales—would occur at CHI's principal place of business: New Hampshire. If injury occurred in New Hampshire, CHI need not travel to Florida to seek redress from Duerr, who, although remaining in Florida, knowingly caused the injury in this forum. *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed. 2d 804 (1984).

As to New Hampshire's interest in this litigation, it cannot be seriously questioned that the state has a strong interest in protecting trade secrets and intellectual property which have been developed in New Hampshire by dint of a New Hampshire company's efforts. *See Paolino v. Channel Home Centers,* 668 F.2d 721, 724 (3d Cir.1981). It is similarly "beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State." *Keeton v. Hustler Magazine,* 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984) (quoting *Leeper, supra,* 114 N.H. at 298, 319 A.2d at 629).

As to CHI's concern in the outcome of this litigation, several interests are at risk. Proprietary interests in copyrighted and trade secret information, the ability to offer a unique product, and the company's market leadership are all allegedly threatened unless CHI can obtain the injunctive relief it herein seeks. Furthermore, if the allegations of the complaint are proven at trial, it is possible that CHI will be entitled by way of a constructive trust to the sale proceeds of the allegedly infringed and mi-

sappropriated proprietary material. *See Paolino, supra,* 668 F.2d at 723.

In sum, any burden on Duerr which might arise from having to defend himself from suit in a New Hampshire forum is overshadowed by both the magnitude of his contacts with this forum and New Hampshire's and CHI's interests in seeing that the litigation remains here. Accordingly, the Court finds that CHI has met its burden to make a prima facie showing of jurisdiction, and Duerr's motion to dismiss for lack of personal jurisdiction (document no. 17) must be denied.

*Motions to Transfer for Improper Venue*

Harris and Duerr also argue that the instant action should be transferred to another judicial district for lack of proper venue in this district under 28 U.S.C. § 1400(a), which states: "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found." Section 1400(a) venue considerations apply to corporate and individual defendants alike. *See, e.g., Donner v. Tams–Witmark Music Library,* 480 F.Supp. 1229, 1235 (E.D.Pa.1979); 7 *Federal Procedure, L.Ed.* § 18:67, at 610 n. 28 and accompanying text (1982 & Supp. June 1987) (and cases cited therein).

Harris admits that venue is proper as to itself under section 1400(a), but argues that because venue is improper as to Duerr, and because joint defendants residing or found in different judicial districts may not be joined in one action, Harris has a "derivative right" to have the action dismissed or transferred for improper venue. Harris Copyright Venue Memorandum at 2 (citing *Bradford Novelty Co. v. Manheim,* 156 F.Supp. 489 (S.D.N.Y.1957)). Implicit in Harris's argument is the premise that venue is improper as to Duerr. However, if venue is proper as to Duerr and he therefore has no "primary" right to dismissal, Harris can have no derivative right to dis-

missal. Accordingly, the Court first looks to venue considerations relating to Duerr.

■ Venue is proper as to Duerr under section 1400(a). That section provides, as stated above, that venue is proper "in the district in which the defendant or his agent resides or may be found." Because Duerr neither resides in nor maintains an agent in New Hampshire, Duerr Affidavit at 1–2, in order for section 1400(a) to apply it must be established that, as a matter of law, he "may be found" in New Hampshire.

Courts have consistently held that for the purpose of establishing venue under section 1400(a), defendants "may be found" in any jurisdiction in which personal jurisdiction may be asserted over them. *See, e.g., Triple A Partnership v. MPL Communications,* 629 F.Supp. 1520, 1522 (D.Kan.1986) (quoting *Battle Creek Equip. Co. v. Roberts Mfg. Co.,* 460 F.Supp. 18, 22 (W.D.Mich.1978)); 7 *Federal Procedure, L.Ed., supra,* § 18:67, at 609 n. 22 and accompanying text (and cases therein cited).[4] The Court having previously found it may properly assert personal jurisdiction over Duerr by reason of his contacts with this forum, it now concomitantly finds that Duerr "may be found" in this district. Venue is therefore proper in this district as to Duerr.

Venue having been found proper as to Duerr, he has no right to dismissal or transfer of the action. Therefore, Harris can have no "derivative right" to dismissal, assuming that such a right even exists, a finding the Court specifically declines to make. Defendants' motions to transfer for improper venue (document nos. 16 and 19) are denied.

*Motions to Transfer Based on Forum Non Conveniens*

Defendants next contend that this action should be transferred to the Middle District of Florida pursuant to the nonconstitutional doctrine of forum non conveniens, codi-

---

**4.** If venue is proper under section 1400(a) with respect to copyright claims, then in the interest of conserving judicial resources all claims may be tried in this district, even those claims as to which venue would have been improper if unac-

companied by a copyright infringement claim. *Mihalek Corp. v. Michigan,* 595 F.Supp. 903, 907 (E.D.Mich.1984); *Micromanipulator Co. v. Bough,* 558 F.Supp. 36, 37 (D.Nev.1982).

fied at 28 U.S.C. § 1404(a). *See Trans–Asiatic Oil v. Apex Oil*, 743 F.2d 956, 959 (1st Cir.1984). Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In support of their motions, defendants assert that nearly all of their key witnesses and the evidentiary materials they will require are located in Florida and that transportation of witnesses and documentary evidence to New Hampshire will disrupt their business. Harris Forum Memo at 2; Duerr Forum Memo at 2; Duerr Affidavit ¶ 9; Normington Affidavit ¶ 6. In addition, defendants assert that although a corporation has the power to compel its employees to testify, an individual does not, and that, consequently, Duerr is at risk of being unable to present live testimony on his behalf. Duerr Forum Memo at 4–5; Harris Forum Memo at 4–5.

■ The convenience of the parties and the witnesses and the availability of documents needed for evidence are factors a district court must consider in resolving whether to grant a motion to transfer venue under section 1404(a). *Cianbro Corp. v. Curran–Lavoie*, Inc., 814 F.2d 7, 11 (1st Cir.1987). However, a defendant moving to transfer an action is faced with the substantial burden of having to show that the factors enumerated above predominate in favor of transfer. As the Supreme Court has held, "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Transfer is inappropriate if the effect is merely to shift inconvenience from the defendant to the plaintiff. *See, e.g., Peterson v. United States Steel Corp.*, 624 F.Supp. 44, 45 (N.D.Ill.1985). And amorphous allegations of need as to unnamed witnesses and unspecified documents are inadequate to satisfy the mandate of *Gulf Oil Corp.* that there be a clear showing that a balancing of conveniences *strongly* favors the granting of a motion.

*See, e.g., id.* at 45–46; *J.I. Kislak Mortgage Corp. v. Connecticut Bank & Trust*, 604 F.Supp. 346, 348 (S.D.Fla.1985) (citing, *e.g.*, C. Wright, A. Miller & E. Cooper, 15 *Federal Practice and Procedure* § 3851, at 271 (1976) [current version at 424–32 (2d ed. 1986) ] ).

■ Harris and Duerr fail to identify by name or subject matter the Florida witnesses they allegedly will need at trial. Similarly, they fail to specify either the nature of the estimated total number of documents they will need to transport to New Hampshire. In contrast, CHI's principal place of business is in New Hampshire, and the company asserts that those witnesses it would call at trial concerning the design and development of the system and the maintainance of PagePro software as proprietary trade secret information are employed there. CHI Combined Memo at 33. CHI further points out that witnesses and documentation necessary to show the existence and nature of Duerr's agreements with CHI, his access to proprietary information, and the damages CHI has incurred as a result of the alleged misappropriation of its information are also located in New Hampshire. *Id.* Finally, the Court notes that defendants have not refuted CHI's allegation that the National Accounts Division of the Harris Information Systems group is located in Nashua, New Hampshire. *See* Wilson Affidavit ¶ 13. Thus, even accepting at face value Harris's and Duerr's assertions that they will incur hardship in transporting their witnesses and documents to New Hampshire, they have not shown that by doing so they would incur any greater hardship than CHI would face in having to bring the action in Florida.

Furthermore, the interests of justice militate against transfer. Harris, a significantly larger firm than CHI, can more readily bear the expenses attendant to litigation in a forum far from home base. *See Galonis v. NBC*, 498 F.Supp. 789, 793 (D.N.H.1980). And, as stated above, New Hampshire has a significant interest in providing a forum for the redress of injuries

which occur within the state. *Keeton v. Hustler, supra; Holloway, supra.*

In sum, the Court finds that the defendants have failed to establish that the balance of conveniences is strongly in their favor and that the interests of justice would be better served by adjudicating this dispute in Florida. Accordingly, the Court sees no reason to disturb CHI's choice of forum. Defendants' motions to transfer this action under the doctrine of forum non conveniens (document nos. 15 and 18) are denied.

*Remaining Motions*

Defendants move to strike the Wilson Affidavit on the basis that it "contains only vague and general allegations such as were set forth in the complaint." Motion to Strike, ¶ 1. The Court disagrees. The Wilson Affidavit sets forth a number of specific allegations, some of which are not contained in the complaint, *see, e.g.,* Wilson Affidavit at ¶ 9 (in 1986 Harris ran advertisement in Manchester Union Leader offering employment positions to persons knowledgeable about PagePro), and some of which act to clarify portions of the complaint, *e.g., compare* Wilson Affidavit at ¶¶ 10–11 (specific allegations as to lost sales and lost market share) *with* Amended Complaint ¶ 28 (general allegation as to damages suffered). Defendants' other objections (e.g., that Mr. Wilson is not specific as to the extent of CHI's lost market share) may be resolved through discovery or by way of impeachment at trial. Defendants' motion to strike (document no. 28) is denied.

Defendants move for the Court's permission to file a response memorandum to CHI's Combined Memo. Such a memorandum is unnecessary. In defendants' six memoranda accompanying their motions to dismiss, defendants' counsel has adequately set forth the law supporting defendants' position. The Court has considered defendants' arguments and has independently researched the issues thus raised and finds

that the weight of authority does not lie with defendants. Defendants' motion to file a response memorandum (document no. 29) is therefore denied.

Defendants move for the Court to order CHI to provide specific information as to which corporate entities within CHI's parent and subsidiary corporate structure have been damaged and to what degree by the events herein at issue.[5] Defendants also move for sanctions. As defendants have failed to specify reasons or appropriate legal authority to support their request for sanctions, such are denied.

By way of objection to defendants' request for the above-mentioned information, CHI contends that their own document requests served on defendants on March 10 and June 9, 1987, have gone unanswered. This excuse is no excuse at all; a motion to produce pursuant to Rule 37(a)(2), Fed.R. Civ.P., is the appropriate response, not a withholding of its own cooperation.

■■■ CHI's second objection, that defendants' request for information regarding CHI's corporate "history" is too vague to permit Harris to appropriately respond, has merit. Although the scope of permitted discovery is extremely broad under the Federal Rules of Evidence, and information may be obtained regarding any matter, not privileged, that is relevant to the action, whether or not the information sought will be admissible at trial, so long as it is reasonably calculated to lead to the discovery of admissible evidence, Rule 26(b), Fed.R. Civ.P.; *see generally,* C. Wright & A. Miller, 8 *Federal Practice and Procedure: Civil* §§ 2007 to 2015 (1970 & Supp.1987), items requested must be described "with reasonable particularity," Rule 34(b), Fed. R.Civ.P.

A request for corporate "history" (*see* Production Motion ¶ 6) is too unclear to permit proper response. Because defendants' request as presently framed is not reasonably particular as to which information or documents are sought, the Court

5. Defendants also move in this motion for the Court to order CHI to produce Duerr's employment agreements. The Court accepts CHI's representation that it will forthwith produce copies of same, Objection to Production Motion at 4, and accordingly does not address defendants' request at this juncture.

denies defendants' motion to compel production (document no. 32).

### Conclusion

For the reasons above stated, defendants' motions (document nos. 14, 15, 16, 17, 18, 19, 28, 29, and 32) are denied. The parties are instructed to proceed with discovery in accordance with the Federal Rules of Civil Procedure and the Rules of this Court. Defendants are reminded that they have not yet answered the Amended Complaint, and must now do so within ten days. Rule 12(a), Fed.R.Civ.P.

SO ORDERED.