**Eugene LaCROIX, Jr., Plaintiff,**

v.

**AMERICAN HORSE SHOW ASSOCIATION, et al., Defendants.**

**No. 1:91CV2106.**

United States District Court, N.D. Ohio, Eastern Division.

April 28, 1994.

Mitchell J. Yelsky, Leonard W. Yelsky, Fanette Poulos Yelsky, Yelsky & Lonardo, Cleveland, OH, for plaintiff.

Kenneth A. Zirm, Walter & Haverfield, Cleveland, OH, for defendants American Horse Show Ass'n, Inc., Jane F. Clark, Ira A. Finkelstein, Tenzer, Greenblatt, Fallon & Kaplan.

David L. Marburger, Lawrence D. Pollack, Baker & Hostetler, Cleveland, OH, for defendants Jane F. Clark, Ira A. Finkelstein, Tenzer, Greenblatt, Fallon & Kaplan.

*MEMORANDUM OF OPINION AND OR-*
*DER ADOPTING MAGISTRATE'S*
*REPORT AND RECOMMENDATION*
*OF JULY 22, 1993*

WELLS, District Judge.

This case is before this Court on the following motions: (1) defendants Finkelstein and Tenzer, Greenblatt's motion to quash service (docket no. 117), (2) defendants Finkelstein and Tenzer, Greenblatt's motion for summary judgment (docket no. 146), (3) defendants American Horse Show Association ("AHSA") and Clark's motion for reconsideration (docket no. 70), and (4) plaintiff Eugene LaCroix's motion for sanctions (docket no. 71).

On July 22, 1993, United States Magistrate Judge Patricia A. Hemann filed a report and recommendation recommending that the Court deny each of these motions. All of the defendants have objected to the Magistrate Judge's report and recommendation. In addition, defendants Finkelstein and Tenzer, Greenblatt have filed a "motion for reconsid-

eration" of the Magistrate Judge's recommendations (docket no. 202). For the reasons that follow, the Court accepts and adopts Magistrate Judge Hemann's report and recommendation, overrules the defendants' objections, and denies defendants Finkelstein and Tenzer, Greenblatt's motion for reconsideration. The Court denies defendants Finkelstein and Tenzer, Greenblatt's motion to quash and motion for summary judgment, denies defendants AHSA and Clark's motion for reconsideration, and denies LaCroix's motion for sanctions.

## ANALYSIS

### Defendant Finkelstein and Tenzer, Greenblatt's Motion to Quash and Motion for Summary Judgment

Finkelstein and Tenzer, Greenblatt were added as defendants in this action when LaCroix filed an amended complaint on July 14, 1992. At the time they were joined, these defendants were representing defendants AHSA and Clark in this litigation.

On July 27, 1992, LaCroix served Finkelstein and Tenzer, Greenblatt by certified mail at their offices in New York City. Although they did not formally challenge this service, and eventually waived any objection, they did file a motion challenging the Court's personal jurisdiction over them. LaCroix then made personal service on Finkelstein and Tenzer, Greenblatt when Finkelstein appeared for a conference with United States Magistrate Judge Jack B. Streepy on November 20, 1992. Finkelstein and Tenzer, Greenblatt later requested leave to withdraw as counsel for the AHSA and Clark.

Finkelstein and Tenzer, Greenblatt now seek to quash the second (personal) service of process. They also contend the Court lacks personal jurisdiction over them. The motion for summary judgment for lack of personal jurisdiction assumes that the personal service was ineffective, and argues that Ohio's long-arm statute and the Due Process Clause of the United States Constitution do not permit this Court to exercise personal jurisdiction. However, these defendants concede the Court has personal jurisdiction if the personal service on them was proper. Therefore, the first issue for this Court to resolve is whether the personal service of process was effective.

■ Counsel appearing in federal court are generally immune from service in another case if the immunity serves the interest of justice. However, there is no immunity if the service is made in a case related to the one in which the attorney is making an appearance. Here, the service was made in the case in which the attorney was making an appearance.[1]

> The case is, therefore, not one where the cause pending before the court is subjected to possible hindrance or delay by service of process in some unrelated suit.... Even if we make the assumption that the non-recognition of ... immunity might have discouraged [the attorney's] participation as counsel, still it would defeat, not aid, the administration of justice in the principal cause to encourage [counsel's] voluntary presence by the grant of an immunity which would relieve him from any compulsion either to continue his presence or to answer for his acts affecting the progress of the cause.

*Lamb v. Schmitt,* 285 U.S. 222, 228, 52 S.Ct. 317, 319, 76 L.Ed. 720 (1932); *Ferguson v. Ford Motor Co.,* 92 F.Supp. 868 (S.D.N.Y. 1950) (counsel who entered jurisdiction to appear for another party in an action was subject to personal service in that action). The personal service of process was therefore proper, and the motion to quash is denied.

Finkelstein and Tenzer, Greenblatt argue the second service of process should not be considered in determining whether this Court has personal jurisdiction, because they were challenging the Court's personal jurisdiction at the time they were re-served. In so arguing, these defendants rely on the abolition of "special" appearances under the Federal Rules. With the abolition of special

---

**1.** It is important to note that, when they were served, Finkelstein and Tenzer, Greenblatt were appearing before Magistrate Judge Streepy both as counsel for the AHSA and Clark and on their own behalf.

appearances, parties may appear in an action without waiving jurisdictional defenses.

The abolition of special appearances is irrelevant to the question at hand. LaCroix does not claim the Court has personal jurisdiction merely because these defendants appeared; LaCroix claims personal jurisdiction because he served them while they were here. Furthermore, Finkelstein was not only appearing "specially" on his own behalf; he was also appearing as counsel for AHSA and Clark. Even if he might have been immune from service in the former circumstance, he is not immune in the latter. The abolition of special appearances is irrelevant.

Finkelstein and Tanzer, Greenblatt have admitted that the Court has personal jurisdiction over them if the personal service on them was proper. Since personal service was proper, the Court has personal jurisdiction. The motion to dismiss is therefore denied.

### Defendants AHSA and Clark's Motion for Reconsideration

On March 30, 1992, United States Senior District Judge Alvin I. Krenzler[2] denied the motion to dismiss or to transfer venue filed by defendants AHSA and Clark. These defendants ask this Court to reconsider that ruling. The motion for reconsideration raises two issues, (1) venue, and (2) personal jurisdiction over defendant Clark.

*Venue.* AHSA and Clark contend that evidence disclosed during discovery has revealed that plaintiff previously misrepresented the location of witnesses and documents to the Court. AHSA and Clark argue that these facts show the case should be transferred to New York.

Magistrate Judge Hemann determined that venue was proper in this district because this is "a judicial district in which the defendants [were] subject to personal jurisdiction at the time the action [was] commenced." 28 U.S.C. § 1391(a)(3). She further determined that AHSA and Clark did not meet their burden of proving that the convenience of the parties and witnesses would best be served by a transfer of venue; "[t]ransferring this

case ... will simply transfer inconvenience from one party to the other." The AHSA and Clark do not object to these determinations except to the extent that they challenge the Court's personal jurisdiction over Clark. As discussed below, Judge Krenzler already determined that the Court has personal jurisdiction over Clark. Therefore, the Court accepts the Magistrate Judge's report and recommendation and denies the motion for reconsideration regarding transfer of venue.

■ *Personal Jurisdiction.* Magistrate Judge Hemann has recommended that the Court deny AHSA and Clark's motion for reconsideration regarding the Court's personal jurisdiction over defendant Clark, because Judge Krenzler already decided that issue and these defendants raised no new evidence or arguments to bring his ruling into question. The Court agrees. Although this Court has the power to depart from the rulings previously entered in this case, the prior rulings should continue to govern unless they are clearly erroneous and would work a manifest injustice. *See Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). The issues raised by Clark in the motion for reconsideration were already considered by Judge Krenzler, and Clark did not demonstrate that the ruling was clearly erroneous. Therefore, the Court accepts Magistrate Judge Hemann's report and recommendation and denies AHSA and Clark's motion for reconsideration regarding the Court's personal jurisdiction.

### Motions for Sanctions filed by AHSA and Clark and by LaCroix

Defendants AHSA and Clark moved for sanctions against LaCroix because LaCroix misled the Court about the location of witnesses. Magistrate Judge Hemann has recommended that the Court overrule this motion at this time, but revisit the issue if it becomes obvious at trial that LaCroix did misrepresent the location of witnesses. Neither party has objected to this recommendation. The Court therefore accepts and adopts the Magistrate Judge's report and

**2.** Now retired.

recommendation, and denies AHSA and Clark's motion for sanctions at this time.

LaCroix moved for sanctions against all defendants because they filed frivolous and unnecessary pleadings and motions and engaged in other allegedly obstructive behavior during discovery. Magistrate Judge Hemann recommended that the Court overrule this motion because "the conduct is not so egregious as to merit sanctions." Again, neither party has objected to this recommendation. The Court therefore accepts and adopts the Magistrate Judge's report and recommendation and denies LaCroix's motion for sanctions.

## CONCLUSION

For all the foregoing reasons, the Court hereby accepts and adopts the report and recommendation filed by Magistrate Judge Hemann on July 22, 1993, overrules the defendants' objections thereto, and denies defendants Finkelstein and Tenzer, Greenblatt's motion for reconsideration of the report and recommendation. The Court therefore denies Finkelstein and Tenzer, Greenblatt's motion to quash and motion for summary judgment regarding personal jurisdiction. The Court also denies defendants AHSA and Clark's motion for reconsideration, and LaCroix's motion for sanctions.

The parties have filed additional dispositive and non-dispositive motions in this case. These matters are within the May 24, 1993 order of reference to United States Magistrate Judge Patricia A. Hemann. Therefore, the case will be returned to Magistrate Judge Hemann to prepare a report and recommendation to the Court regarding these motions.

## REPORT AND RECOMMENDATION

### July 22, 1994

HEMANN, United States Magistrate Judge.

This matter is before the magistrate judge pursuant to an order of reference entered by Chief Judge Lambros on May 24, 1993. Pending are eight motions, including the following: 1) Motion of Defendants Ira Finkelstein and Tenzer, Greenblatt, Fallon & Kaplan to Quash Service of Process; 2) Motion of Defendants Finkelstein and Tenzer, Greenblatt, Fallon & Kaplan for Summary Judgment on Plaintiff's Inability to Sustain His Burden of Proving Personal Jurisdiction Over the Movants; 3) Motion of Defendants AHSA [American Horse Shows Association] and Jane F. Clark for Reconsideration of Defendants' Motion to Dismiss the Complaint, or, in the Alternative, to Transfer Venue to the Southern District of New York and for Sanctions; and 4) Plaintiff's Motion to Impose Sanctions on Defendants and Their Counsel. These motions are the subject of this Report and Recommendation. For the reasons stated below the magistrate judge recommends that all of the motions be overruled.

## FACTUAL BACKGROUND

The original Complaint in this action was filed on October 18, 1991, against AHSA and Jane F. Clark, the president of AHSA (the "AHSA defendants"). Thereafter, on July 24, 1992, plaintiff filed his Amended Complaint, adding as defendants Ira A. Finkelstein and Tenzer, Greenblatt, Fallon & Kaplan, the law firm in which Mr. Finkelstein is a partner (the "Finkelstein defendants"). At the time the Amended Complaint was filed, Mr. Finkelstein and Tenzer, Greenblatt represented defendants AHSA and Ms. Clark.[1] The Finkelstein defendants were served by certified mail in New York and personally in Ohio.

The Amended Complaint alleges defamation arising out of the publication of an article in the September 1991 issue of *Horse Show,* a magazine published by AHSA. The article is an account of the results of a preliminary injunction hearing held in the New York Supreme Court on a complaint filed by plaintiff Eugene LaCroix. Mr. LaCroix had been the subject of an investigation and hearing by AHSA's Hearing Committee on

---

1. Mr. Finkelstein and Tenzer, Greenblatt subsequently withdrew as counsel for the AHSA defendants.

charges of a violation of AHSA's Drugs and Medications Rule at an AHSA-recognized horse show held in Kentucky in September 1989. In March 1991, as a result of the hearing (held on December 12, 1991), the AHSA Hearing Committee rendered an opinion in which it concluded that Mr. LaCroix was guilty of the alleged violation, would be suspended from participating in AHSA-sponsored shows for three months and would be fined in the amount of $3000. The action commenced by Mr. LaCroix in the New York Supreme Court sought an emergency stay of his suspension. That stay was denied, and AHSA published its account of the proceedings in *Horse Show*.[2]

The following facts with respect to the parties and the publication of the allegedly defamatory article appear to be undisputed. The principal office of AHSA is in New York City, although it maintains a small office with four employees in Columbus, Ohio. AHSA employs 69 persons, none of whom live or work in the Northern District of Ohio. AHSA maintains no bank accounts or corporate records in the Northern District of Ohio; it does not own, use, possess or hold any property in the Northern District. It has no mailing address or telephone listing in the Northern District and performs no services here.

*Horse Show* is written and edited in New York City. A press release which ultimately became the article at issue was written by Mr. Finkelstein in New York City, although it appears he had contact with John G. Lengel, D.V.M., the administrator of the AHSA Drug and Medications Program, who resides in Hilliard, Ohio. AHSA has between 55,000 and 56,000 members nationally, 1,045 of whom are in Ohio. AHSA published 52,400 copies of the September 1991 issue of *Horse Show*, 4% of which were sent to Ohio.

Defendant Clark is the non-salaried president of AHSA. She resides in New York and works in New York City. She does not maintain a residence or place of business in Ohio and does not own property here. She does not maintain a bank account in Ohio and does not employ anyone in Ohio.

Defendant Finkelstein is a partner in Tenzer, Greenblatt, a New York partnership and law firm. The firm's offices are located in midtown Manhattan. Mr. Finkelstein lives in New York City. Neither Mr. Finkelstein nor Tenzer, Greenblatt have an office in Ohio; own property in Ohio; or maintain an address, telephone listing or post office box in Ohio. Mr. Finkelstein is not licensed to practice law in Ohio.

Mr. Finkelstein drafted a press release about the New York Supreme Court case for AHSA. He worked with the AHSA's general counsel and AHSA to complete the press release, which was distributed on July 3, 1991. All drafting, revising and editing of the press release took place in New York. Mr. Finkelstein did not circulate the press release beyond AHSA and its general counsel. The press release is not the subject of the lawsuit. Based on past practice, however, Mr. Finkelstein expected that *Horse Show* might publish his release as an article. He maintains that he did not know it would be published until he saw it in the September 1991 issue. He further maintains that when he prepared the press release he did not know that it would or could injure plaintiff in Ohio. He maintains that he did not know the plaintiff had a reputation which could be injured in this state.[3] This is despite the fact that several Ohio residents testified on behalf of plaintiff in the New York Supreme Court proceeding, in which Mr. Finkelstein participated.

Plaintiff LaCroix is not a resident of Ohio. His business includes professionally training, breeding, selling, and showing Arabian horses for clients as well as himself. He also has a consulting business which involves going to different Arabian horse forms around the country and assisting trainers and owners of Arabian horses with training, setting up and assisting with breeding programs and setting up and organizing auctions. Plaintiff asserts that Ohio is a popular area for soliciting and doing business in the Arabian horse industry

---

2. The issue of whether certain statements in the article are defamatory is the subject of a Motion for Summary Judgment filed by defendants.

3. Plaintiff maintains that he was injured in 39 states, not just Ohio.

and is an important center of the Arabian horse business. Plaintiff allegedly has done a substantial amount of business in Ohio, including the sale of millions of dollars of Arabian horses to farms in the northern part of the state. He allegedly has numerous peers, friends, acquaintances, clients and customers located in the northern part of Ohio.

Apparently many of the documents relevant to this case are located in either New York or Kentucky. Although the issue is in dispute and will be discussed in detail *infra,* plaintiff maintains that 60% of his trial witnesses are located in this state. Conversely AHSA maintains that its witnesses on the issue of the preparation of the *Horse Show* article and publication of the magazine are all located in New York. AHSA also cites the fact that the proceeding underlying this cause of action, *i.e.* the New York Supreme Court preliminary injunction hearing, took place entirely in New York with plaintiff, his counsel and his Ohio witnesses present.

## LEGAL CONCLUSIONS

■ *Motion to Quash Service of Process.* On July 24, 1992 plaintiff filed an Amended Complaint adding the Finkelstein defendants. On July 27, 1992 plaintiff served the defendants by certified mail at their offices in New York City. Although the record suggests that the defendants initially questioned the validity of that mail service, defendants now accept service by certified mail.

In the meantime, however, on November 20, 1992, Magistrate Judge Jack Streepy held a conference at Eaton Center in Cleveland for the purpose of resolving discovery disputes. Because Mr. Finkelstein had been serving as counsel for AHSA at the time the discovery responses were filed, and because Mr. Finkelstein was the object of a sanctions motion filed by plaintiff, he appeared at the conference. As he entered Eaton Center, a process server handed Mr. Finkelstein a summons and complaint and said, "Ira Finkelstein, you're served." Service was being made on both Mr. Finkelstein and his firm.

Apparently the Finkelstein defendants had anticipated such attempted service. In a letter from David Marburger, counsel for the AHSA defendants, to counsel for plaintiff dated November 17, 1992 Mr. Marburger repeated a telephone request made earlier that "plaintiff and his counsel agree that, when Ira Finkelstein is in Ohio for his deposition or for any other purpose related to defending this case, plaintiff and/or his counsel will not serve Mr. Finkelstein with process or cause him to be served with process issued for purposes of this case." Exhibit D to Plaintiff's Memorandum of Points and Authorities in Opposition to Motion to Quash Service of Process. Neither plaintiff nor his counsel made such an agreement.

In their Motion to Quash the Finkelstein defendants argue that they were immune from service of process on November 20, 1992 because Mr. Finkelstein's attendance at the conference "was important to protect the interests of his clients, his own interest in opposing the ... motion against him for sanctions, and the interest of this Court in arriving at an informed and fair resolution of the discovery disputes." Defendants rely upon *Stewart v. Ramsay,* 242 U.S. 128, 37 S.Ct. 44, 61 L.Ed. 192 (1916), for the proposition that parties appearing in federal court are immune from service of process where the immunity serves the administration of justice. They acknowledge that under *Burnham v. Superior Court of California,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), service on Mr. Finkelstein even while he was temporarily in Ohio would ordinarily comport with due process.

Plaintiff, relying upon *Lamb v. Schmitt,* 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720 (1932), argues that the immunity accorded under *Stewart* does not extend to the situation where, as here, the service of process is in a case related to the case in which the attorney is making his appearance.

Plaintiff's position is correct. In *Lamb* the Court addressed the situation where, as here, counsel for a party in a pending action is served with process in an action related or ancillary to the principal one. The Court articulated the issue as follows: Whether, despite any effect of the immunity in encouraging voluntary attendance at the trial, it should be withheld from one who, while in attendance, is served with process command-

ing his continued presence and aid to facilitate the pending litigation, and to carry it to its final conclusion? 285 U.S. at 226. The test applied by the Court was "whether the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it." *Id.* at 228, 52 S.Ct. at 319. The Court concluded that where the two proceedings are related the intrusion of service of process in the second suit does not obstruct the principal proceeding and immunity is not necessary for the convenience of the courts. *See* 4 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1080 at 511 ("There is generally no immunity from service of process when the suit in which immunity is sought is part of, or a continuation of, the suit for which the person claiming immunity is in the jurisdiction.").

There is no question here that the claims alleged against the Finkelstein defendants in the Amended Complaint are directly related to the claims against AHSA alleged in the initial Complaint. Denying immunity to the Finkelstein defendants under these circumstances is consistent with the governing law as stated in *Lamb*.

The undersigned recommends that the Motion to Quash be overruled.

***Motion of Finkelstein Defendants for Summary Judgment on Plaintiff's Inability to Sustain His Burden of Proving Personal Jurisdiction Over the Movants.*** This Motion for Summary Judgment is in fact a motion to dismiss for lack of personal jurisdiction. The Finkelstein defendants, assuming that personal service on them in Ohio on November 20, 1993 was ineffective, argue that Ohio's long-arm statute and constitutional due process do not permit this court to exercise jurisdiction over them. As stated above, however, under *Lamb v. Schmitt* the service of process on the defendants in Ohio

was effective service. As conceded by the Finkelstein defendants in their Motion to Quash, under *Burnham v. Superior Court of Superior*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), an Ohio court has jurisdiction over transitory defendants served within its territorial jurisdiction. Thus the undersigned recommends that the Finkelstein Defendants' Motion for Summary Judgment be overruled.

***Motion of AHSA Defendants for Reconsideration of Defendants' Motion to Dismiss the Complaint, or, in the Alternative, to Transfer Venue to the Southern District of New York.*** On December 12, 1991 the AHSA Defendants filed their original motion to dismiss or, in the alternative, to transfer venue. Judge Krenzler overruled that motion with a margin entry on March 30, 1992. The motion for reconsideration is based upon information learned during discovery which defendants argue suggests alleged misrepresentations made by plaintiff in opposing the December 12, 1991 motion to dismiss as that motion related to venue.[4] Defendants argue that venue is improper and thus under 28 U.S.C. § 1406(a) the case must be transferred.

█ Defendants specifically allege that plaintiff's representation that most, if not all, of his trial witnesses reside in the Northern District of Ohio is false. Defendants point to certain answers to interrogatories submitted by plaintiff which identify some 49 potential witnesses on the subject of damages, only one of which resides in Ohio. Defendants also point to the depositions of four Ohio witnesses identified by plaintiff as having material information and argue that the depositions of those witnesses demonstrate that they in fact do not have relevant information. They argue that plaintiff's addition of five new Ohio witnesses to his witness list after the filing of the motion for reconsideration is simply an attempt to defeat the motion to

---

4. Defendant Clark moved for dismissal of her claim based upon lack of personal jurisdiction in the December 12, 1991 motion and has renewed that motion in the pending motion for reconsideration. Because Judge Krenzler overruled her motion and because Ms. Clark has not raised any new argument or new evidence with respect to the jurisdictional issue, the undersigned recommends that Judge Krenzler's order of March 30, 1992 remain the law of the case on that issue. Under *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), Judge Krenzler reasonably could have concluded that personal jurisdiction existed over Ms. Clark.

dismiss. Finally defendants argue that the only reason this action was commenced in Ohio is because plaintiff's counsel practices here.

Plaintiff opposes the motion to dismiss by asserting that 60% of his witnesses with material evidence live in Ohio. He also argues, in sum, that venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391(a)(2) or (3).

The version of 28 U.S.C. § 1391(a) in effect in 1991, when this case was filed, read: [5]

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.[6]

Under the third clause jurisdiction and venue are, in fact, coextensive. "The final venue alternative in diversity cases, the one contained in clause (3) of subdivision (a), offers any judicial district in which the defendants ... are subject to personal jurisdiction at action time." 28 U.S.C.A. § 1391, David D. Siegel, "Commentary on 1990 Revision of Subdivisions (a), (b), and (e)" at 6.[7] The comments to § 1391 further state, "If all of the defendants are subject to personal jurisdiction in the district, that district becomes a proper venue of the action against all the defendants even if none resides there and even if the underlying events occurred elsewhere." *Id.* at 7.

Because all defendants are subject to the jurisdiction of this court, venue is proper in the Northern District.

Defendants next argue that transfer of venue to the Southern District of New York is appropriate under 28 U.S.C. § 1404(a), which reads:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Defendants argue that their witnesses are in New York; plaintiff's witnesses may or may not be in Ohio; plaintiff lives in California; relevant documents allegedly are in Kentucky and New York; the cause of action arose in New York with the editing, drafting and publication of the article; and there is no reason to believe that plaintiff was injured in Ohio more than in any other state where the article was published. Plaintiff focuses on the presence of his witnesses in Ohio, the importance of Ohio in the Arabian horse business and the amount of business he has conducted in Ohio.

■ In weighing the merits of a motion to transfer the court should consider the following factors: 1) convenience of the parties and witnesses; 2) access to proof; 3) other practical problems making trial of a case expeditious and inexpensive; 4) availability of process to compel attendance of unwilling witnesses; and 5) the interest of justice. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* The burden is on the defendant as the moving party to establish that there should be a change of venue. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215 (2d Cir.1978), *rev'd*

---

**5.** Defendants err in relying upon an earlier version of § 1391(a) and the case law decided thereunder.

**6.** The 1992 amendment to § 1391(a)(3) adds the following phrase to the end of the sentence: if there is no district in which the action may otherwise be brought. This amendment makes the third clause operative only when venue can-

not be satisfied under either of the other two clauses.

**7.** Commentator Siegel further states, "Venue will apparently be proper as to [a nonresident of the state] in a district in which the summons is merely served on [the nonresident] while [the nonresident] is physically present in the district, even if only transiently." *Id.*

*on other grounds, Factors Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278 (2d Cir.1981).

■ "Transfer is inappropriate if the effect is merely to shift inconvenience from one party to the other." *Buckley v. McGraw–Hill, Inc.,* 762 F.Supp. 430, 439 (D.N.H.1991). Further, "amorphous allegations of need as to unnamed witnesses and unspecified documents are inadequate to satisfy the mandate of *Gulf Oil Corp.* that there be a clear showing that a balancing of conveniences *strongly* favors the granting of a motion." *Id.* at 439, quoting *Crosfield Hastech, Inc. v. Harris Corp.,* 672 F.Supp. 580, 589 (D.N.H.1987). Motions for transfer should not become a "battle of numbers," and a party seeking a transfer of venue under § 1404(a) "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Young v. Armstrong World Industries, Inc.,* 601 F.Supp. 399, 401–02 (N.D.Tex.1984).

Under the law set forth above, defendants have not met their burden on their motion to transfer. With respect to the convenience of witnesses, defendants have made broad allegations of the location of their witnesses and documents but have not complied with the requirement of *Gulf Oil Corp.* by identifying specific witnesses and the scope of their testimony. Plaintiff, on the other hand, did proffer such information. Plaintiff has represented to the court that 60% of his material witnesses reside in Ohio. Transferring this case to the Southern District of New York will simply transfer inconvenience from one party to the other. Furthermore, the little information offered by defendants about their witnesses indicates that those witnesses are employees of AHSA and thus under its control. Under such circumstances defendants should have no problem with producing those witnesses in Ohio.

With respect to the location of documents and other discovery issues, there was a discovery cut off date in this case of February 1, 1993. Summary judgment motions have been filed and opposed. One can assume that the parties have produced to each other copies of relevant documents and conducted relevant depositions. Thus access to documents and persons should no longer be a consideration.

Most persuasive to the undersigned is the fact that judicial economy and the interests of justice would not be served by transferring this case at this stage. The defendants have engaged Ohio counsel who appear to have actively participated in this case, including preparing and filing motions for summary judgment. In the course of reviewing and ruling on the pending motions the court will become fully aware of the facts and legal issues involved in this matter. Transferring the case to New York at this time will do little, if anything, for judicial economy, the administration of justice or the expense of litigation.

The undersigned recommends that the motion for transfer of venue under § 1404(a) be overruled.

■ *Motions for Rule 11 Sanctions.* Plaintiff and the AHSA defendants have filed cross motions for Rule 11 sanctions. Defendants' motion appears to be based upon the allegations that plaintiff falsely represented to the court his material witnesses from Ohio when he opposed the initial Motion to Dismiss or, in the Alternative, to Transfer. Defendants, however, simply make the broad statement that in responding to interrogatory answers and in opposing defense motions plaintiff and his counsel have made statements relevant to the determination of venue which have "proved to be inaccurate."

The undersigned recommends against imposing Rule 11 sanctions on plaintiff or his counsel at this time but further recommends that the issue of sanctions be revisited if it becomes obvious at trial that plaintiff misrepresented to this court that the majority of his material witnesses will be from Ohio.

Plaintiff has moved for sanctions against the AHSA defendants and their counsel because they allegedly filed unnecessary motions, specifically the motion for reconsideration on the venue issue, and because they failed to cite certain cases in their brief.

The issues raised by plaintiff do not merit Rule 11 sanctions. The AHSA defendants appear to have believed they had grounds for filing a motion for reconsideration. The is-

sues relating to the failure to cite certain cases occurred with the initial motion to dismiss, not with the motion for reconsideration. While it is problematic that those cases were not brought to the attention of the court, the conduct is not so egregious as to merit sanctions.

*Summary.* Based upon the foregoing, the undersigned recommends that 1) the Motion to Quash and Motion for Summary Judgment on the issue of personal jurisdiction filed on behalf of the Finkelstein defendants be overruled, 2) the Motion for Reconsideration and for Rule 11 Sanctions filed on behalf of the AHSA defendants be overruled, and 3) the Motion for Sanction filed on behalf of plaintiff be overruled.

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters,* 638 F.2d 947 (6th Cir.1981). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).